Fullerton *v.* Motor Express, Inc., Appellant.

Argued October 1, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*A. Grant Walker,* with him *Gifford, Graham, Mac-Donald & Illig,* for appellant.

*John A. Bowler,* with him *English, Gilson, Baker & Bowler,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, November 9, 1953:

On July 22, 1949, a tractor-trailer belonging to the plaintiff Robert Fullerton was seriously damaged through the negligent operation of a truck-tractor by the defendant James Green, employe of the co-defendant Motor Express, Inc. In the ensuing lawsuit the City of Erie was brought in as an additional defendant but the City was exonerated at the trial which resulted

in a verdict for the plaintiff against James Green and Motor Express, Inc., in the sum of $5,935.97. The defendant Motor Express, Inc. (hereinafter called Motor Express) filed motions for judgment n.o.v. and new trial, which were denied by the lower court. This appeal followed.

It is the contention of Motor Express that it is without legal responsibility for the plaintiff's losses because at the time the accident occurred, James Green was returning from a self-assumed luncheon trip and no evidence was adduced to establish that the company had any control over James Green at the time. The truck-tractor carried the name of Motor Express, and the trial Judge permitted the jury to infer from the markings or signs that the vehicle belonged to the defendant company and that it was being operated in the course of the company's business. This inference the Motor Express regards as error.

The law is clear that an identifying sign on a commercial vehicle declares its reputed ownership as much as a flag proclaims the nationality of the ship which flies it. If the ship is sailing under false colors it will have to answer for the deception. If a name on a vehicle mis-states ownership, opportunity is afforded the named person or firm to disprove the asserted proprietorship.

In *Sefton v. Valley Dairy Co.*, 345 Pa. 324, 326, we said: "It is well settled by our previous decisions that the presence of a defendant's name on a commercial vehicle raises a rebuttable presumption that the vehicle is owned by defendant and that the driver of the vehicle is a servant of defendant acting within the scope of his employment . . . This presumption is sufficient to take the case to the jury even though defendant produces uncontradicted evidence that the driver was not its employee (Holzheimer v. Lit Bros., supra),

or produces evidence that it did not own the vehicle in question."

The most elementary rules of logic, woven into the fabric of correlative social responsibility, as well as the requirements of simple justice, demand that the law be as above indicated. The person who is struck down by a strange vehicle cannot automatically know the business of the owner of the vehicle; and, even with the most diligent inquiry, he may not be able to ascertain the nature of the mission to which the driver was committed at the time. Hence the imperative necessity of the presumption, in a situation of this kind, that the first person or firm to be called to answer for the mishap should be the person or firm whose name decorates the offending vehicle.

Any business organization which permits a commercial conveyance to ply the public highways prominently proclaiming its name owes a duty to the public to stand by that voluntary self-advertising proclamation. That responsibility, of course, is not absolute. The named firm may introduce evidence to show that the identifying trappings were camouflage, or innocent coincidence, or that, although admitting ownership of the vehicle, the driver thereof ignored instructions and headed for Chicago instead of New York as directed. But such explanations are for the jury to evaluate and appraise in the light of all the surrounding circumstances. The lower court, therefore, properly refused to take away from the jury the question of ownership and mission, especially in view of the fact that the employment of James Green by Motor Express was admitted, plus the fact that a dispatcher of Motor Express had instructed James Green that upon returning from lunch he was to pick up for the defendant a trailer [not Fullerton's] and deliver it to the parking lot of the company.

Defendant's counsel presses for a new trial because the lower court refused to request of the jury a specific finding of fact which read as follows: "From the time that James Green, driver of Motor Express tractor, left the premises of the Motor Express to proceed to lunch and up to the time of the happening of the accident, had he performed any duty or service in furtherance of the business of Motor Express?"

Special findings can serve a useful purpose when the circumstances of the case require such findings, but that situation was certainly not present here. Furthermore, the interrogation to be submitted to the jury was so worded as to create a misleading issue. The arc of time covered in the question fell short of the moment which was to determine the liability or nonliability of the company. The question to be decided was not what was Green doing *prior* to the accident but what was his status at the time his truck-tractor ploughed into the plaintiff's tractor-trailer.

Defendant's counsel argues that had the special finding been submitted and the jury had answered the question in the negative but still found against the defendant company (which it did) this would have revealed an inconsistency in the verdict which the Court would have had to set aside. This type of argument suggests that a court trial is a game of wits, with counsel pitting its ingenuity against the jury, putting to the jury crafty questions, a misunderstanding or misapprehension of which will trip the jury into self-contradictory answers. It is the duty of the trial judge to prevent the laying of such legalistic snares, an obligation which the Judge here met effectively and decisively.

The only other matter that needs to be considered in this appeal is the matter of the verdict. Motor Express complains that since the verdict as rendered by

the jury did not actually mention its name (although the intention of the jury to hold Motor Express liable was clear) a new trial should be allowed. But this argument places a covering hand over the stenographic account of what occurred in the courtroom when the verdict was read by the Judge. The record reveals the following: "The Court: You say you find the City of Erie not liable in any way. Do I understand that your intention then is to find against the Motor Express and James Green for the Fullerton claim? Is that true? The Foreman: Yes, sir. The Court: We will mold the verdict in the Fullerton case to read as follows: We, the jury impaneled and sworn to try the issue in this case, do find for Robert Fullerton against Motor Express, Inc., and James Green in the amount of $5,935.97. Does that meet with your approval? The Foreman: Yes, sir. The Court: That is your understanding, all of you? (The jurors all answered yes.)"

After a review of the entire record we discover no reason to disturb the jury's verdict, and the judgment of the lower court is, therefore, affirmed.