**BALTIMORE AND PITTSBURGH MOTOR EXPRESS, INC. aka B & P Motor Express, Inc., a corporation, Plaintiff,**

**v.**

**Joseph J. SUSTRICK, Individually and doing business as Western Flour Company, Defendant and Third-Party Plaintiff,**

**v.**

**ALLSTATE INSURANCE COMPANY, Third-Party Defendant.**

**ALLSTATE INSURANCE COMPANY, Plaintiff,**

**v.**

**NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant.**

**Civ. A. Nos. 64–761, 64–1018.**

United States District Court
W. D. Pennsylvania.

July 3, 1968.

Randall J. McConnell, Jr., Dickie, Mc-Camey & Chilcote, Pittsburgh, Pa., for plaintiffs.

Joseph F. Weis, Jr., Weis & Weis, Pittsburgh, Pa., for defendants.

## OPINION

WEBER, District Judge.

Prior to the institution of these suits a suit had been brought in this court against Baltimore and Pittsburgh Motor Express, Inc. (herein called B & P) for personal injuries received in an automobile accident. This action was settled before trial by payment of damages by Allstate Insurance Company, the insurer of B & P. The claim against B & P was based on the allegation that B & P was liable for damages because the truck in question was being operated at the time in the conduct of its transportation business under its I.C.C. motor carrier rights.

These two suits arise out of that settlement. In the first action filed (C.A. 64–761) B & P sued Sustrick, individually and doing business as Western Flour

Company, on the grounds that the lease of the truck from Sustrick to B & P required Sustrick to provide the liability insurance when the equipment was being deadheaded or bobtailed. A motion to dismiss because the action was not brought in the name of the real party in interest, Allstate, was denied. Defendant then joined Allstate as Third Party Defendant on the grounds that the Allstate liability policy issued to B & P. provided for liability coverage for the vehicle and its driver when the truck was being used in the business of B & P.

The second suit (C.A. 64–1018) was filed by Allstate against Nationwide Mutual Insurance Company on the grounds that Nationwide's policy issued to Sustrick provided coverage when the vehicle was not being used on the business of B & P.

Involving common issues of fact and arising out of the same set of circumstances, the cases were consolidated for trial, and upon the jury's findings in answer to special interrogatories that the truck was not being used in the service of B & P at the time of the accident, the court ordered judgment entered for plaintiffs in both cases, but limiting them to one recovery.

Defendants in both cases have moved for a new trial and for judgment N.O.V. on the grounds that they are not liable as a matter of law and that the issues should not have been submitted to the jury. Upon review of the evidence and the briefs and arguments of counsel we believe that there were issues of fact for the jury and that the jury's determination was based on substantial evidence as well as issues of credibility.

We have here only one basic issue, and one real party plaintiff, despite the two different suits brought on alternate theories of liability. There can be only one recovery. The only question at issue here is, which insurance carrier is liable under the facts of this accident?

These cases appear at first impression to fit the pattern of that series of cases imposing liability on a lessee (common carrier) of a motor truck rather than upon the lessor (owner) under circumstances where the truck had completed its assigned shipment for the lessee and was returning to its terminal or to the owner's storage facility. See: Glens Falls Ins. Co. v. Cradlebaugh and Allison, 266 F.Supp. 630 (W.D.Pa.1966) aff'd. p. c. 376 F.2d 844 (3rd Circ. 1966); Mellon Nat. Bank & Trust Co. v. Sophie Lines, Inc., 289 F.2d 473 (3rd Circ. 1961); and Walters v. Dunlap, 368 F.2d 118 (3rd Circ. 1966), aff'g. 250 F.Supp. 76 (W.D.Pa.1966).

The rationale of these "return trip" cases is expressed in Hodges v. Johnson, 52 F.Supp. 488 (W.D.Va.1943) as:

> "It would be absurd to say that this responsibility should attach while the truck is proceeding on a journey loaded, and should not attach on a return journey while empty. Both the journey to Roanoke, and the return journey to Charlotte, are necessary parts of the same trip, and the whole trip was undertaken, and was being made under the authority of (the franchise holder)."

The factors which entered into the holdings in the above cases were:

(1) An exclusive lease from the owner to the carrier.

(2) The business of the owner was solely the leasing of vehicles and the business of the carrier was transportation.

(3) The physical presence of the identifying decals of the lessee-carrier on the outside of the vehicle at the time of the accident.

(4) The public policy set forth in the statutory and administrative regulations of motor carrier transportation imposing liability upon the certified carrier for operations under their certificate rights.

In the opinion of the court facts were disclosed at the trial of this case which required submission to the jury the question of whose business the truck was upon at the time of the accident in question. These facts distinguished the case from those above cited and upon the

findings of the jury required a different result:

(a) As distinguished from the holding in Walters v. Dunlap, supra, the lessor's (owner's) business was not solely the leasing of trucks. He was a carrier on his own account, using this same equipment despite the exclusive lease, hauling exempt commodities under the business name of Western Flour Company. The extent of this use of the vehicle was shown by the driver's testimony that on about 90% of his return trips to the Pittsburgh terminal he hauled grain for the Western Flour Company account.

(b) The B & P terminal in the Pittsburgh area was actually the owner-lessor's terminal, from which the truck would be dispatched in the service of other carriers, i. e. Kaplan, a certificate carrier, or Western Flour Co., an exempt carrier, as well as for B & P.

(c) The same truck was also under an exclusive lease to Kaplan Trucking Company, a certificate carrier, and was frequently used in the service of this company.

(d) While the B & P decal was on the outside of the truck at the time of the accident, the truck also carried with it the decals of Kaplan and Western Flour.

(e) While the driver noted in his log book that he was on B & P service at the time of the accident, he regularly carried three log books in the truck, for B & P, for Kaplan, and for Western Flour.

(f) The owner-lessor and the driver received no compensation from B & P for a return trip to its Pittsburgh terminal after making a delivery of B & P cargo.

(g) There were few return trips to Pittsburgh which carried B & P or Kaplan shipments.

(h) The driver would receive orders from Sustrick before departing from the Pittsburgh terminal on what shipment he would pick up after delivering the B & P shipment.

The defendants argue that the public policy of imposing liability on the certified common carrier requires that liability must be imposed upon the lessee. See Mellon Nat. Bank & Trust Co. v. Sophie Lines, Inc., supra. However, the public policy, and its statutory and regulatory provisions, are designed for the protection of the public and the public interest has been served by the settlement of the personal injury claim here by Allstate, the insurer for B & P. As was held in Allstate Ins. Co. v. Liberty Mutual Ins. Co., 368 F.2d 121 (3rd Circ. 1966):

"* * * this case does not involve a question of implementing lease provisions which are required for the protection of the public. Rather we are concerned with responsibility as between insurance carriers." (p. 125).

The above cited case involved a one-way trip lease which required that the lessee release and the lessor receipt for the return of the truck at the termination of the shipment pursuant to I.C.C. regulations. The truck had completed its one-way trip and was returning empty when the accident happened. Although the lessee's decals had been removed from the cab doors before the accident, the I.C.C.-required surrender and receipt had not been executed at the time. The trial court found this determinative of the lessee's continuing liability in the light of I.C.C. policy. The Court of Appeals found that in fact the lessee's control had ended and that in determining liability between lessor's and lessee's insurers, I.C.C. considerations are not determinative because they are not required to protect the public.

Similarly, as between the two insurance carriers, the presence of the identifying decal on the outside of a commercial vehicle creates a presumption of agency and course of business. This presumption is rebuttable. Kaplan Trucking Co. v. Coshocton Cartage, Inc., 207 Pa.Super. 43, 215 A.2d 320 (1965). However, the public policy of this rule is well stated in Fullerton v. Motor Express, Inc., 375 Pa. 173, 100 A.2d 73 (1953):

"The law is clear that an identifying sign on a vehicle declares its reputed

ownership as much as a flag proclaims the nationality of the ship which flies it. If the ship is sailing under false colors it will have to answer for the deception. If a name on a vehicle misstates ownership, opportunity is afforded the named person or firm to disprove the asserted proprietorship.

\*　　\*　　\*　　\*　　\*　　\*

"The most elementary rules of logic, woven into the fabric of correlative social responsibility, as well as the requirements of simple justice, demand that the law be as above indicated. The person who is struck down by a strange vehicle cannot automatically know the business of the owner of the vehicle; and, even with the most diligent inquiry, he may not be able to ascertain the nature of the mission to which the driver was committed at the time. Hence the imperative necessity of the presumption in a situation of this kind that the first person or firm to be called to answer for the mishap should be the person or firm whose name decorates the offending vehicle." 100 A.2d 74.

The *Fullerton* case goes on to state that the responsibility is not absolute, that the named firm may introduce evidence to rebut the presumption and that its explanations are for the jury to evaluate in the light of all the surrounding circumstances. In the present case the named firm, the certified carrier, met its public responsibility, but now seeks indemnity from the party that bears primary responsibility.

■■ We believe that the evidence in this case required the jury to determine whether or not the truck and driver were actually upon the business of B & P at the time of the accident, despite the lease and the decals. The evidence does not require the conclusion that the return trip was necessary in the business of B & P, despite the lease, the decal, the log, and the I.C.C. requirements. The evidence would support the conclusions

that shipments for B & P were essentially one-way trips, and that on the return trips without B & P cargo the truck was available to Sustrick for his own carrier operations or for assignment to Kaplan cargo. The jury had substantial evidence to support its finding that the truck was not being used in the service of B & P at the time of the accident and that it was not being operated on behalf of any other person engaged in the business of transportation other than Sustrick. As between Sustrick and B & P, and their respective carriers, Sustrick must bear responsibility because his double leasing and his independent carrier operations destroy the presumptions raised under the exclusive lease and the identifying decal.

■■ Despite the two separate lawsuits and the two separate plaintiffs, there can only be one recovery here. Allstate has met B & P's liability in full and is subrogated to its right of recovery in B & P's action against Sustrick. In the other action Allstate sues Sustrick's carrier directly. The provisions of the lease which is made the basis of the B & P action do not bind the insurance carriers because they were not parties to the lease. We really have only one action, Allstate's, based on alternative theories of recovery. Therefore, we find that the interpretation of the term "deadheading" in the lease immaterial to the question of whose insurance coverage was in effect. Any inconsistency in the jury's answers to interrogatories is due to the alternate theories of the two causes of action. When viewed as determinations of the question on whose business was the truck operating at the time of the accident they are not inconsistent. Whether Sustrick procured the type of insurance coverage required by the lease is immaterial because the coverage which he did procure covers the situation in effect at the time of the accident.

The motions of defendants for new trial and judgment n. o. v. will be denied.