Thomas Joseph Lego, Deceased, Johnetta F. Lego, Widow, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board, D'Agata National Trucking Co. and Home Insurance Company, Respondents.

594

Argued March 3, 1982, before Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three.

*Edward Benoff,* with him *Marc Alan Krefetz,* for petitioner.

*Ronald F. Bove, Swartz, Campbell & Detweiler,* for respondent, D'Agata National Trucking Co.

OPINION BY JUDGE ROGERS, May 26, 1982:

Johnetta F. Lego, the widow of Thomas Joseph Lego, has appealed from an order of the Workmen's Compensation Appeal Board (Board) reversing a referee's award of benefits based on her Fatal Claim Petition seeking workmen's compensation benefits from Martin Matsinger and from D'Agata National Trucking Co. (D'Agata). Matsinger was the owner of a tractor which he leased with Thomas Joseph Lego as driver to D'Agata. Thomas Joseph Lego was killed while driving the tractor trailer for D'Agata on the Pennsylvania Turnpike.

Mrs. Lego filed a Fatal Claim Petition against both Matsinger and D'Agata but Matsinger had no workmen's compensation insurance, could not be served with the Fatal Claim Petition, and has since died and there are no workmen's compensation benefits available from that source.

The referee, after hearings, wrote a comprehensive decision supporting an award of benefits to the widow against D'Agata which he concluded was the decedent's employer. The Board reversed the referee's decision and award and dismissed the Fatal Claim Petition. We reverse the Board's action and order the benefits awarded by the referee to be reinstated.

At issue, of course, is whether Thomas Joseph Lego was D'Agata's employee at the time of his fatal accident on the Pennsylvania Turnpike. The general principles of law pertinent to this, the so-called "borrowed servant," class of case, are those set out in *Mature v. Angelo*, 373 Pa. 593, 97 A.2d 59 (1953) as follows:

1. One who is in the general employ of another may, with respect to certain work, be transferred to the service of a third person in such a way that he becomes, for the time being and in

the particular service which he is engaged to perform, an employe of that person: ....

2. The crucial test in determining whether a servant furnished by one person to another becomes the employe of the person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done *but also to the manner of performing it*: ....

3. A servant is the employe of the person who has the *right* of controlling the manner of his performance of the work, irrespective of whether he actually *exercises* that control or not: ....

4. Where one is engaged in the business of renting out trucks, automobiles, cranes, or any other machine, and furnishes a driver or operator as part of the hiring, there is a factual presumption that the operator remains in the employ of his original master, and, unless that presumption is overcome by evidence that the borrowing employer *in fact* assumes control of the employe's *manner of performing the work,* the servant remains in the service of his original employer: ....

5. Facts which indicate that the servant remains the employe of his original master are, among others, that the latter has the right to select the employe to be loaned and to discharge him at any time and send another in his place, that the lent servant has the skill of a technician or specialist which the performance of the work requires, that the hiring is at a rate by the day or hour, and that the employment is for no definite period: ....

6. The mere fact that the person to whom a machine and its operator are supplied points out to the operator from time to time the work to be done and the place where it is to be performed does not in any way militate against the continuance of the relation of employe and employer between the operator and his original master: . . . .

*Mature v. Angelo,* 373 Pa. at 595-598, 97 A.2d at 59-61 (emphasis in original) (citations omitted).

The crucial question then is that of whether Matsinger passed to D'Agata, which then exercised, the right to control the manner of driver—Lego's performance of his work. Nothing is more firmly established than that each case of this kind must be decided on its own facts. Here the referee made the following findings of fact:

5. The tractor, pulling Defendant's D'Agata National Trucking Company's trailer, which decedent was driving at the time of his death, was owned by Martin Matsinger but had been leased by Matsinger to D'Agata under a "30 Day or more TRIP LEASE and Inter-Change of Vehicles by Motor Carriers" agreement. D'Agata held ICC and PUC rights for this vehicle.

6. The tractor being driven by decedent bore the removable decal logo of D'Agata, and the trailer which it pulled also bore the D'Agata logo. There is no evidence that the tractor or trailer bore Matsinger's name thereon.

7. The agreement between Matsinger, the Lessor, and D'Agata, the Lessee, contained, *inter alia,* the following provisions:

It is understood that the leased equipment under this agreement is in the exclusive posses-

sion, control, and use of the authorized carrier Lessee. . . . The Lessor shall surrender full control, possession and management of said equipment to the Lessee during the terms of this Lease. . . .

8. The referee finds that D'Agata had the right to instruct decedent as to the route he should take in the performance of his driving duties.

9. Upon picking up the cargo at his destination, Lego was required to telephone D'Agata's dispatcher for return trip instructions.

10. D'Agata had given decedent an envelope of instructions, prepared by D'Agata's public liability insurance carrier, for decedent to follow in the event of a motor vehicle accident involving the tractor trailer he was driving.

11. Some time after Matsinger had introduced Lego to D'Agata, Lego made application to change his teamster union affiliation from Local 676 to Local 830, the local in which D'Agata's salaried drivers were members.

12. D'Agata cleared Lego's physical and driving qualifications before he was permitted to haul cargo for D'Agata.

13. D'Agata did not carry Lego on its regular payroll, did not pay for fringe benefits on his behalf, and did not make the customary payroll deductions for him.

The Board did not question the sufficiency of the evidence supporting the referee's findings, save one; but in the case of the other findings simply noted that each, standing alone, provided insufficient support for the conclusion of law that Thomas Joseph Lego was

D'Agata's employee. We disagree that any findings were unsupported and also with the Board's apparent conclusion that the findings taken together did not support the determination that D'Agata had the right to and in fact did control the manner in which Lego did his work.

The finding which the Board considered was not sufficiently supported by the evidence is number eight, to the effect that D'Agata had the right to instruct Lego as to the routes he should use. The referee went to great pains to support this finding by discussion of the record as follows:

> D'Agata had given Lego a Pennsylvania Turnpike Requisition Card for his trip to Latrobe and back. Although D'Agata's witness, Augustine Matteo, insisted that Lego had selected his own routes, the inference is irresistable that D'Agata, by giving Lego the Turnpike "credit card", had told Lego to go to Latrobe via the Turnpike. Indeed there was no testimony from D'Agata's witnesses to dispel this factual inference, such as testimony that Lego had chosen to use roads other than the Turnpike to get to Latrobe on other occasions. In fact, Matteo, when questioned about driving in bad weather, implied, on cross-examination, that D'Agata would tell Lego to use the safest route, that is the Turnpike.

These facts culled from the record sufficiently support the finding number eight; and the right to instruct a driver as to the route to take indicates the presence of the right to control the manner of performing the driver's work. *See Martin Trucking Co. v. Workmen's Compensation Appeal Board*, 30 Pa. Commonwealth Ct. 367, 373 A.2d 1168 (1977).

Both D'Agata and the Board urge that the fact, which is the subject of finding number six, that the

tractor bore D'Agata's logo, is not determinative that D'Agata was Lego's employer. Even if not decisive, this circumstance is entitled to considerable weight. In *Fullerton v. Motor Express, Inc.*, 375 Pa. 173, 100 A.2d 73 (1953) the Supreme Court held that the presence of a logo on a commercial vehicle raises a rebuttable presumption that the one to whom the logo refers is the employer of the operator of the vehicle; and this principle applies in workmen's compensation cases. *Workmen's Compensation Appeal Board v. Navajo Freight Lines, Inc.*, 19 Pa. Commonwealth Ct. 25, 338 A.2d 766 (1975).

Finding number seven records that the lease between Matsinger and D'Agata conferred upon the latter exclusive possession and control and use of the tractor and contained a surrender by Matsinger to D'Agata of "full control, possession and management" of the equipment. While, again, if this were the only indicia of D'Agata's control of the manner of Lego's use of the equipment, it might, if other facts indicated the contrary, not be conclusive; but surely in the circumstances of this case it is well nigh overwhelming evidence of D'Agata's right to control Lego's use of the equipment.

The referee's finding number nine, to the effect that D'Agata gave Lego return trip instructions; his finding number ten, to the effect that D'Agata gave Lego instructions as to his conduct in the case of an accident; his finding number eleven, to the effect that Lego applied to change his union affiliation to that of the union representing D'Agata's workers; and his finding number twelve, to the effect that driver Lego's physical and driving qualifications were passed by D'Agata before he went to work; are all also circumstances which justify the conclusion that D'Agata had obtained and exercised the right to control Lego's performance of his work.

As we have already noted, the case has to be decided on all of its facts. Having concluded that all of the referee's facts are supported by the evidence, we are compelled also to conclude as did the referee that Lego was D'Agata's employee.

The Board rested its decision primarily on the case of *Daily Express, Inc. v. Workmen's Compensation Appeal Board,* 46 Pa. Commonwealth Ct. 434, 406 A.2d 600 (1979), where we were required to decide whether a deceased driver had been the employee of one Noltee who owned the tractor trailer in which he died, or of one Daily who leased the equipment with the driver. After a consideration of all the facts of that case, the referee found that lessee Daily was the employer and the Board affirmed. Each Noltee and Daily had vigorously contended and adduced evidence tending to show that the driver was the other's employee. After a careful examination of the record we concluded that the driver remained Noltee's employee agreeing in sum with the lessee Daily that the evidence that he, Daily, had adduced showing Noltee's retention of the control of driver's manner of work required a conclusion that Noltee remained the employer. Among the undisputed facts showing Daily's lack of control were: that the lease agreement provided that drivers covered by the lease remained under the direction and control of the owner, Noltee; that Noltee retained the right to discharge drivers; that Noltee could replace drivers; and that Noltee selected the decedent as a driver after an evaluation of his skills. These circumstances go just the opposite direction in the case here under consideration.

In sum, we conclude that the referee's findings are supported by the record and that they amply support the referee's conclusion that D'Agata was Lego's employer at the time of Logo's death.

We reverse the order of the Workmen's Compensation Appeal Board dated February 19, 1981 and by judgment order to be entered will reinstate the referee's award of benefits to the claimant, Johnetta F. Lego.

## ORDER

AND Now, this 26th day of May, 1982, the order of the Workmen's Compensation Appeal Board in the above-captioned case is reversed. It is ordered that judgment be entered in favor of the claimant, Johnetta F. Lego, and against D'Agata National Trucking Co. It is ordered that D'Agata National Trucking Co. shall pay compensation benefits to the claimant as follows:

(a) at the rate of $171.00 per week from April 4, 1975 through April 28, 1978 after which date David Roney, the decedent's stepson, shall have reached the age of 18;

(b) at the rate of $171.00 per week from April 29, 1978 through March 15, 1980, after which date Thomas Roney, the decedent's stepson, shall have reached the age of 18;

(c) at the rate of $171.00 per week from March 16, 1980 through September 17, 1986, after which date Johnetta Lego, the decedent's daughter, shall have reached the age of 18, and

(d) at the rate of $153.00 per week from September 18, 1986 for the duration of the claimant's widowhood.

The above compensation is to be paid subject to the limitations of the Workmen's Compensation Act, including the limiting provisions of Section 307 of the Act.

D'Agata National Trucking Co. is further directed to reimburse the claimant $1500.00 for funeral expenses.

The above award shall bear interest at the rate of ten per cent (10%) per annum from the date due until the date paid.

It is also hereby ordered that an attorney's fee of twenty per cent (20%) of all past due and future compensation above awarded to the claimant to be paid to Edward Benoff, Esquire directly out of the claimant's award. The balance of the said award shall be paid directly to the claimant.

Judge MENCER did not participate in the decision in this case.