588 A.2d 90

**RED LINE EXPRESS CO., INC. and Zurich
Insurance Co., Petitioners,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (PRICE,
Princeton Management, Inc. and The Ohio Bureau of
Workers Compensation), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 14, 1990.

Decided March 7, 1991.

---

**9.** *Zemprelli v. Thornburgh,* 78 Pa.Commonwealth Ct. 45, 48, n. 3, 466 A.2d 1123, 1125, n. 3 (1983).

376

Etta M. Warman, Fricker & Associates, Pittsburgh, for petitioners.

William G. Cohen, New Castle, for respondents.

Before CRAIG, President Judge, PELLEGRINI, J., and CRUMLISH, Jr., Senior Judge.

PELLEGRINI, Judge.

Red Line Express Co., Inc. (Red Line) files a Petition for Review, appealing an Order of the Workmen's Compensation Appeal Board (Board) affirming the Referee's Decision awarding compensation to Audrey R. Price (Claimant) and dismissing the Claim Petition against Princeton Management, Inc. (Princeton).

Claimant had originally contacted Princeton to obtain employment as a truck driver. (Reproduced Record (R.R.) pp. 41, 48). Princeton signed a contract with her and told her to report to Red Line. (R.R. pp. 42, 49). Claimant was assigned to drive a 1984 International tractor, which was owned by Princeton and was leased to Red Line. (R.R. pp. 48, 123–124). Claimant was hauling her fourth load for Red Line when she suffered an injury to her lower back when she fell approximately three feet off the tractor-trailer.

Following the Claimant's filing of two Claim Petitions, the Referee issued a Decision awarding compensation to the Claimant. (R.R. pp. 11–17). The Referee concluded that, based on *Lego v. Workmen's Compensation Appeal Board (D'Agata National Trucking Co.)*, 66 Pa.Commonwealth Ct. 593, 445 A.2d 1324 (1982), Claimant was an employee of Red Line at the time of her injury. (R.R. p. 16). The Referee then dismissed the Claim Petition against Princeton.[1] (R.R. p. 16). The Referee made several Findings of Fact which were pertinent to his Decision. The Referee found that Princeton and Red Line had entered into an Equipment Lease Agreement (Lease) which stated that "for the duration of this lease, Owner [Princeton] leases Equipment unto Carrier [Red Line] for Carrier's exclusive possession, control, use and complete responsibility." (Referee's

---

1. We must note that neither Princeton nor its alleged insurer, The Ohio Bureau of Worker's Compensation, filed an answer or entered an appearance in this matter. Questions remaining as to whether Princeton has workmen's compensation insurance or whether the Board has jurisdiction over this Ohio corporation are not before us.

Finding of Fact (R.F.F.) # 5; R.R. p. 13). The Referee also found that the Claimant was given a written driving test and a medical examiner certificate by Red Line, and that the truck she drove had Red Line's insignia on it. (R.F.F. # 4; R.R. p. 13).

The Referee made further findings in support of his conclusion. He found that Claimant was required to call Red Line prior to picking up a load in order to obtain a trip number and to call after the load had been delivered. (R.F.F. # 6; R.R. p. 13). The Referee also found that if Claimant had obtained a trip lease from another carrier, Red Line had the right to veto it if, for example, it took her in the wrong direction. (R.F.F. # 6; R.R. p. 13). Finally, the Referee found that Claimant was required to familiarize herself with Red Line's dispatch operation, the necessary paper to get paid, delivery receipts, trip reports and Red Line's rules and regulations. (R.F.F. # 12; R.R. p. 14).

Red Line appealed the Referee's Decision to the Board, which affirmed. (R.R. pp. 19–21, 24–29). The Board agreed with the Referee's findings that Claimant was to call Red Line's dispatcher prior to and upon completion of a delivery, and that Red Line retained the right to veto a trip lease. (R.R. p. 26). The Board also agreed with the Referee's finding that Claimant was required to familiarize herself with various aspects of Red Line's operation. (R.R. p. 26). Finally, the Board stated that paragraph two of the Lease "specifically says that the carrier has the exclusive possession, control, use and complete responsibility for the equipment and driver." [2] (R.R. p. 26). Red Line now appeals the Board's Order.[3]

2. We note that the Board misquotes Paragraph 2 of the Lease by adding the words "and driver." *See* Paragraph 2 of the Lease, infra. (R.R. p. 123).

3. Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or findings of fact are not supported by substantial evidence. *Estate of McGovern v. State Employee's Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986); 2 Pa.C.S. § 704.

Red Line contends that the Referee committed an error of law by finding that the evidence presented established that Claimant was a "borrowed" employee of Red Line. Red Line argues that Claimant was an employee of Princeton and contends that the Referee committed an error by dismissing the Claim Petition against Princeton. Finally, Red Line contends that the Referee's Decision is unsupported by medical evidence.

■■■ "The question of whether an employer-employee relationship exists is one of law, based upon the facts of each case." *Accountemps v. Workmen's Compensation Appeal Board (Meyers & S.A.)*, 120 Pa.Commonwealth Ct. 489, 491, 548 A.2d 703, 705 (1988); *Pennsylvania Manufacturer's Association Insurance Co. v. Workmen's Compensation Appeal Board (Sheffer)*, 52 Pa.Commonwealth Ct. 588, 590, 418 A.2d 780, 781 (1980). "When an employee is furnished by one entity to another, the situation is one of 'borrowed' employee." *Accountemps*, 120 Pa.Commonwealth Ct. at 492, 548 A.2d at 705; *See also Shreiner Trucking Co. v. Workmen's Compensation Appeal Board (Wagner)*, 97 Pa.Commonwealth Ct. 182, 509 A.2d 1337 (1986).

■■■ In *Daily Express, Inc. v. Workmen's Compensation Appeal Board (Chamberlain)*, 46 Pa.Commonwealth Ct. 434, 436–437, 406 A.2d 600, 601–602 (1979), we summarized the factors to be considered in determining which party is the employer as originally set forth by the Pennsylvania Supreme Court in *Mature v. Angelo*, 373 Pa. 593, 97 A.2d 59 (1953):

> (1) one who is in the general employ of one employer may be transferred to the service of another in such a manner that the employee becomes an employee of the second employer;
>
> (2) whether or not the transferred employee becomes the employee of the second employer depends on whether the first employer passes to the second employer *not only*

*the right to control the employee's work, but also his manner of performing it;*

(3) it is enough to establish the employer-employee relationship if the employer has the right to control the employee's manner of performance of work, regardless of whether the right is ever exercised;

(4) where one is engaged in the business of renting out trucks and furnishes a driver as part of the hiring of the truck, there is a *presumption that the driver remains in the employ of his original employer until there is evidence that the second employer, in fact, assumed control over the employee's manner of performing his work;*

(5) facts which indicate that an employee remains in the service of his original employer include the *original employer's right to select the employee to be loaned and to discharge him at any time and send another in his place,* the loaned employee's possession of a skill or *special training* required by the work for the second employer, and employment at a daily or hourly rate *for no definite period;*

(6) the fact that the second employer *designates the work to be done and where it is to be done does not militate against the first employer-employee relationship;* and

(7) when the facts are *undisputed, the determination of who is the employee's employer is one of law,* but when the facts are disputed, the determination is one of fact. (Emphasis added.)

▉ Under the factors set forth in *Daily Express,* there is a presumption that the Claimant remained an employee of Princeton, unless there is evidence that Red Line, in fact, assumed control over her manner of performing the work. In order to determine whether the Referee properly concluded that Red Line had assumed control over the manner Claimant performed her work, we must review both the Lease between Princeton and Red Line and the testimony which the Referee found as credible.

There are several sections of the Lease between Princeton and Red Line which are relevant to the issue of who was Claimant's employer. Section 2 of the Lease states in pertinent part:

> Equipment Owner [Princeton] represents to Carrier [Red Line] that Owner holds title to and/or authority to lease the ... Equipment ... described herein. For the duration of this lease, Owner leases Equipment unto Carrier for *Carrier's exclusive possession, control, use and complete responsibility.... Owner shall furnish and pay a competent, reliable and physically fit operator or driver,* together with any necessary helpers, to operate Equipment as part of the consideration hereof. Owner represents that the *driver ... is familiar with and will obey all applicable state and federal laws and regulations;* ... that driver ... will cooperate with Carrier in achieving compliance with said laws and regulations and will promptly file with carrier all log sheets, physical examination certificates, [etc].

(R.R. p. 123) (emphasis added).

Section 8 of the Lease is also relevant. It states in pertinent part:

> Cost of Operations. *Owner* shall have the duty to keep Equipment in a good state of repair and to pay all repairs ... and ... all other costs of operation ... includ[ing] ...: fuel; fuel taxes; empty and loaded mileage; permits of all types; tolls ...; ... *wages and remuneration of operators, drivers and helpers;* ... payments for injury or damages to operators, drivers and helpers ...; *workmen's compensation,* unemployment insurance, social security or other similar taxes, insurance or benefits on operators, drivers or helpers, and in connection therewith, *Owner* shall *make all payroll, tax and other deductions* required;

(R.R. p. 124) (emphasis added).

Finally, there is Section 14 of the Lease, which was not cited by either the Referee or the Board, which states in full:

Interpretation of this Agreement. This agreement shall be interpreted under the laws of the state of Pennsylvania. The relationship between Carrier and Owner shall be that of *independent contractor. Employees or agents of one party shall not be considered as contractor's employees or agents of the other parts.*

(R.R. p. 124) (emphasis added).

These sections of the Lease, while not dispositive of the issue, evidence whether Princeton intended Red Line to assume control over the Claimant's work and manner of performing it. Under the terms of the Lease, the tractor itself would be under Red Line's exclusive control. However, Princeton was to provide a competent driver for the tractor who was willing to obey all laws. Princeton was also to pay for all repairs, pay for the driver's wages and workmen's compensation insurance, and make all necessary payroll deductions. These provisions, as well as the inclusion of Section 14, evidence an intent by the parties that the driver remain an employee of Princeton.

Although the provisions of the Lease tend to indicate that the Claimant was to remain an employee of Princeton, the determining factor is the actual conduct of the parties and whether Red Line actually had the power to control Claimant's work and manner of performance. *Mature; Daily Express.*

The Referee accepted the testimony of the Claimant as credible. (R.F.F. # 15; R.R. p. 14). The Claimant testified that she contacted Princeton for a job, which subsequently hired her, told her what she was to get paid and what her duties were. (R.R. pp. 41–42, 48). Claimant stated that Princeton sent her to Red Line in order to drive a tractor-trailer which Princeton had previously leased to Red Line. (R.R. pp. 48, 123–124). The Claimant testified that when she went to Red Line, they gave her a written driving test and a medical examiner's certificate. (R.R. pp. 43–44, 92–93). Claimant further testified that she was given the physical examination prior to reporting to Red Line, and that both the written driver's test and medical examiner's

certificate are required by Interstate Commerce Commission regulations. (R.R. p. 49).

Claimant also testified as to the control Red Line had over her. She testified that she was told to call Red Line in order to be told where to pick up a load and where to deliver it, which she did on the day of her injury. (R.R. pp. 44, 73). Claimant testified that Red Line would tell her to call upon completion of the delivery "to tell them [she] delivered it." (R.R. p. 45). She also stated that the tractor had a Red Line insignia on it. (R.R. p. 44). Claimant further stated that Red Line had the right to veto a trip lease she received from another company for the return trip if, for example, it took her the wrong way. (R.R. p. 45).

However, the Claimant also testified that she would periodically call Princeton to tell them how things were going and where she was at. (R.R. p. 45). She admitted that Princeton had told her what route to take on one of her four deliveries. (R.R. pp. 45–46). Claimant also testified that Red Line never told her which routes to take, what hours she must work, nor whether she was hired for a specific period of time. (R.R. pp. 49, 51, 64). She further testified that she had the right to refuse a Red Line load, and that if Princeton told her to haul a load other than for Red Line, she would. (R.R. pp. 49–50).

The Referee based his conclusion that Claimant was an employee of Red Line on the factors set forth in *Lego.* In *Lego,* this Court found that the claimant was an employee of the lessee of the truck. We found several factors to be relevant, among them: the lease provision providing the lessee with "exclusive possession, control, and use;" the lessee's logo on the tractor; and that lessee provided the driver with instructions on where to go and how to return. *Lego.* We stated that the presence of the logo, although not decisive, "is entitled to considerable weight." *Lego,* 66 Pa.Commonwealth Ct. 600, 445 A.2d at 1327. We also stated that the exclusive possession and control provision is not conclusive, but that "the right to instruct a driver as to the route to take indicates that presence of the right to

control the manner of performing the driver's work." *Lego*, 66 Pa.Commonwealth Ct. at 600, 445 A.2d at 1327. Thus, the case turned on the instructions given by the lessee to the driver.

As *Lego* held, a lease provision providing a lessee with "exclusive possession, control and use" was an important factor in determining who is the "employer" for Workmen's Compensation purposes. However, such a provision is not conclusive as to that finding. In *Patterson v. Workmen's Compensation Appeal Board (W.W. Sell Corp.)*, 86 Pa.Commonwealth Ct. 608, 485 A.2d 886 (1985), we stated that although the lease agreement provided that the equipment was to be in exclusive possession and control of the lessee, one must also look at the facts to determine whether control of the driver was transferred. Additionally, in *Workmen's Compensation Appeal Board (Teufel) v. Dupes*, 24 Pa.Commonwealth Ct. 47, 353 A.2d 908 (1976), we held that the facts showed that the lessee had no right to control the work or manner of performance of the driver despite the provision in the lease providing lessee with exclusive possession and control of the equipment. Furthermore, in *J. Miller Co. v. Mixter*, 2 Pa.Commonwealth Ct. 229, 277 A.2d 867 (1971), we held that it was an error for the Board to find an employer-employee relationship based solely on the exclusive possession and control of equipment provision in the lease, citing *Walton v. Harold M. Kelly, Inc.*, 218 Pa.Superior Ct. 28, 269 A.2d 347 (1970). Therefore, we must look beyond this provision to the facts of the case.

As stated in *Lego*, the presence of a logo of Red Line on the tractor is a factor to consider, and should be given considerable weight. However in the present case, Donald R. Chichilla, president of Red Line, expressly testified to the uncontradicted fact that the "doors ... have Red Line decals which said *leased to* Red Line Express." (R.R. p. 199). In *Shreiner Trucking Co. v. Workmen's Compensation Appeal Board (Wagner)*, 97 Pa.Commonwealth Ct. 182, 509 A.2d 1337 (1986), we held that although the pres-

ence of this lessee's logo on the tractor raises a rebuttable presumption that the driver is an employee of that party, the facts show that the driver remained under lessor's control and was thus lessor's employee. Here, this presumption is rebutted by the fact that the logo stated "leased to" and by the particular facts testified to by the Claimant as to her relationship with Red Line.

Another important factor not present in *Lego* is that here the Lease provides that Princeton is to pay for the driver's workmen's compensation insurance. In *Maurer v. Workmen's Compensation Appeal Board (American Trans Freight, Inc.)*, 116 Pa.Commonwealth Ct. 224, 228, 541 A.2d 436, 438 (1988), we stated that "one important fact prevents American [lessor] from denying the existence of an employer-employee relationship—American provided workmen's compensation coverage for Claimant." In *J. Miller Co.*, we noted the significance of the provision in the lease that the lessor was to pay for coverage of "workmen's compensation [and] unemployment insurance." *J. Miller Co.*, 2 Pa.Commonwealth Ct. at 234, 277 A.2d at 870. In *Dupes*, we noted that the lessor was to pay for the driver's workmen's compensation and unemployment insurance. *Dupes*, 24 Pa.Commonwealth Ct. at 49, 353 A.2d at 909.

Of most significance to the present case is that the facts show that Red Line did not have the power to control the Claimant's manner of performing her work. The Claimant was paid by Princeton based on the trip, not on hours worked for Red Line. The payment of the driver by the lessor based on the number and value of deliveries was cited numerous times as a factor tending to show that the lessor was the employer. *See Patterson; Daily; Douglas v. Workmen's Compensation Appeal Board (Dennis Trucking)*, 40 Pa.Commonwealth Ct. 101, 396 A.2d 882 (1979). Princeton also retained the right to fire her or transfer her to another truck other than the one leased by Red Line. Claimant had the right to refuse a delivery for Red Line if she wanted to and would take another load for Princeton if asked. As stated by factor 5 in *Daily*, the

right to control the manner of performing the work includes the right to hire, fire or transfer a driver from one truck to another. *See Patterson; Dupes; J. Miller.*

█ The only action Red Line took with regards to Claimant was to have her take a driver's examination, provide her with a medical certificate, and tell her where to pick up a load and where to deliver it. These first two actions were merely Red Line's attempt to have Claimant conform to the laws and regulations governing the industry. Princeton provided in the Lease that the driver would obey all laws, and the lessee requirement that she obey the laws does not rise to the level of control needed to create an employer-employee relationship. *See Daily,* 46 Pa.Commonwealth Ct. at 440, 406 A.2d at 603. Furthermore, as stated by factor 6 in *Daily,* the mere fact that lessee instructs the driver where to pick up a load and where to deliver it, does not, without more, such as instructions on specific routes to take, create the control necessary for the employer-employee relationship. *See Patterson; Daily; Douglas;* and *J. Miller.*

Finally, there is also the fact that the parties, by inclusion of Section 14 of the Lease, intended the driver to remain an employee of Princeton. The lease in *J. Miller* contained an identical provision. We stated that although "we are not bound by the nomenclature of the parties applied to their relationship, ... the other terms of the agreement and the admitted facts establish that the parties correctly designated their relationship." *J. Miller,* 2 Pa.Commonwealth at 237–238, 277 A.2d at 872. We believe that this is what the parties in the present case intended, and the facts bear this out.

The Claimant's testimony, coupled with the terms of the Lease, clearly show that she remained an employee of Princeton. It shows that Red Line had no right to, nor did, control the work and the manner of performing it. Accordingly, we find that the Referee committed an error of law in concluding that Claimant was an employee of Red Line and dismissing the Claim Petition against Princeton.

Therefore, we will reverse the Order of the Board and Referee's Decision holding that Red Line is Claimant's employer, vacate all other aspects of the Board's Order and Referee's Decision, and remand to the Referee to reinstate the Claim Petition against Princeton.

## ORDER

AND NOW, this 7th day of March, 1991, the Order of the Workmen's Compensation Appeal Board dated January 26, 1990, is reversed in part and vacated in part. This case is to be remanded to the Referee to reinstate the Claim Petition against Princeton Management, Inc.

Jurisdiction relinquished.