J-A14017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| VALERIE HODGE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ARAMARK HEALTHCARE SUPPORT SERVICES, LLC AND ARAMARK HEALTHCARE | |
| | No. 2201 EDA 2016 |

Appeal from the Order June 14, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): May Term 2015 No. 2582

BEFORE:  BENDER, P.J.E., BOWES AND SHOGAN, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED DECEMBER 05, 2017**

Valerie Hodge appeals from the June 14, 2016 order entering summary judgment in favor of ARAMARK Healthcare Support Services, LLC. We reverse and remand for further proceedings.

On June 6, 2014, at about 5:00 p.m., Valerie Hodge, a veteran operating room nurse at Holy Redeemer Hospital (the "Hospital"), was working after-hours on an on-call basis.  As she entered a sub-sterile scrub room to retrieve supplies for the next surgery, her feet went out from under her, sending her head backward into a tiled wall and her body to the floor. Just as she started to slip, she heard a voice yell, "Watch, the floor is wet." Deposition of Valerie Hodge, 1/20/16, at 83.  The voice belonged to custodian Chuck Varga, who had just wet mopped the scrub room floor.  Mr.

Varga went to Nurse Hodge's aid, but when she was unable to stand, he summoned recovery room personnel for assistance. Due to the fall, Nurse Hodge suffered disabling back and head injuries that rendered her unable to return to work.

On May 22, 2015, Nurse Hodge filed a negligence action against Aramark Healthcare, identified as a Pennsylvania corporation with a principal place of business at 1101 Market Street in Philadelphia, and Aramark Healthcare Support Services, LLC, a Pennsylvania limited liability company with its principal office at the same Market Street address. She alleged that the two defendants (collectively "Aramark") were contractually responsible to Holy Redeemer Hospital for housekeeping services, "including the cleaning, mopping and maintenance of floor surfaces throughout the Hospital," or the supervision of those services. According to the Complaint, Aramark, "acting through its agents, servants, or employees who were acting within the course and scope of their employment or through their ostensible agents[,]" was responsible for cleaning and mopping the Hospital floors, including the floor where Ms. Hodge fell. Complaint, 5/22/15, at ¶8. It was alleged that Nurse Hodge slipped on an accumulation of water or other cleaning liquid residue negligently left on the floor by the Aramark agent or employee. Nurse Hodge also averred that Aramark was negligent in failing to train, supervise, and monitor those entrusted with mopping the floors, and that it failed to establish and enforce a reliable system to ensure

the safety of the floors. Specifically, Aramark did not instruct its staff on the proper use of warning signage or use soaps and mops designed to eliminate or reduce the risk of slippage.

Aramark[1] filed an answer in which it denied allegations of agency, vicarious liability, and negligence, and pled in new matter that it did not owe any duty to Nurse Hodge as it did not create or allow a dangerous condition of which it had notice or knowledge. Aramark alleged further that it had no notice that the plaintiff would not discover the dangerous condition, or fail to protect herself from it. Furthermore, it had no duty as it exercised "adequate care" in hiring and training and supervising its employees. Aramark Answer and New Matter, at ¶21. Furthermore, Aramark maintained that the nature of the condition was open and obvious, that Ms. Hodge either knew of it or should have known, with the exercise of reasonable care, but that she voluntarily assumed the risk of her own injury.

After discovery, Aramark moved for summary judgment on March 7, 2016. Aramark maintained that Ms. Hodge had failed to demonstrate that Aramark breached its "limited contractual consulting duty;" "that it had any actual or constructive notice of a dangerous condition that caused the

---

[1] Aramark denied that Aramark Healthcare should be a defendant, and pled that the correct name of the entity that provided services at Holy Redeemer Hospital was Aramark Healthcare Support Services, LLC, and that it provided the services pursuant to a Management Services Agreement. Aramark Answer and New Matter, 6/11/15, at ¶¶7, 8.

accident;" or that it was the proximate cause of damages to plaintiff. Motion for Summary Judgment, 3/7/16, at ¶4. It maintained that Aramark did not contract to provide housekeeping services such as cleaning and mopping, and such duties were performed by Hospital employees. Aramark argued that its duty of care to a third party was defined by the maintenance contract between the company and the owner or possessor of the property. Aramark contended that the possessor of land, in this case the Hospital, owed the legal duty of care to protect Nurse Hodge and others from dangerous conditions on the property of which it should have been aware. The Hospital was not relieved of that duty by contracting with Aramark for management services, particularly when it retained control over the manner the work was performed by its employees. *Id*. at ¶29. In short, Aramark contended that the Hospital, not Aramark, created the condition.

In opposition to summary judgment, Nurse Hodge argued that Mr. Varga was negligent in failing to place warning signs after he wet mopped the floor, and consequently, she fell. She contended that Mr. Varga was a borrowed servant of Aramark as that entity asserted control over the manner in which he performed his custodial duties. Specifically, Aramark supervisory personnel trained and supervised the custodians, determined what equipment and procedures would be used, implemented safety procedures, and reviewed their performance. In this case, Aramark's Director of Environmental Services disciplined Mr. Varga, mandated that he

be in-serviced on safety procedures when performing wet floor tasks, and used the incident to reinforce those procedures with the entire custodial staff. Thus, Nurse Hodge argued, Aramark was subject to vicarious liability for the negligence of its servant, Mr. Varga.

The trial court granted summary judgment in favor of Aramark. Upon reconsideration, the court explained the rationale for its decision. It found first that Varga was not a borrowed servant of Aramark. It concluded further that Nurse Hodge failed to proffer evidence that Aramark was negligent in its training of custodial employees regarding wet floor safety.[2]

Nurse Hodge timely appealed to this Court from the grant of summary judgment and she presents the following issues challenging the propriety of the trial court's grant of summary judgment in favor of Aramark:

1. Where the Plaintiff nurse fell on a freshly mopped hospital floor lacking any warning signs, did the Trial Court err in finding there were no material issues of fact as to whether a custodian employed by the Hospital but supervised by an [on] site contractor, Aramark, was a "borrowed servant" of Aramark where the record established that Aramark's supervision included not only controlling where and when the custodian was to mop floors in the Hospital but also how he was to mop them?

2. Whether the Plaintiff fell on a freshly mopped floor lacking any warning signs did the Trial Court err in concluding that the mopping custodian (Varga) was not a borrowed servant of Aramark when it ignored facts establishing that at the time and

_____

[2] The court also rejected the notion that *res ipsa loquitur* permitted a jury to infer negligence from the occurrence of the accident. That issue is not before us on appeal.

place of the custodian's negligence he was under the direct supervision of an Aramark employee and that Aramark was responsible for the training of custodians as to the placement of "slippery when wet" warning signs?

3. Whether the Plaintiff fell on a freshly mopped floor lacking any warning signs did the Trial Court err in concluding that no finder of fact could reasonably infer that Aramark was responsible for training custodians as to the placement of warning signs when mopping floors and that such signs needed to be placed regardless of the time of day or night in light of the testimony of Aramark's director of housekeeping that (1) failure to place a sign was an inexcusable breach of duty, and (2) he issued a Disciplinary Notice to Varga stating, *inter alia,* "failure to perform duties as assigned" and requiring "in service" training and (3) where, for the next five days, at the daily safety gatherings, the custodial staff was reminded by him of this requirement?

4. Did the [T]rial [C]ourt err in failing to find that a fact finder could reasonably infer that contractor Aramark was negligent in its training of the custodial staff when custodian Varga, admitted to the Aramark chief of environmental services that he did not know about the requirement of placing safely signs after mopping *at any time of day or night*, despite the fact that he had been with the Hospital for a couple of years, normally worked in the area where the fall occurred, and normally worked under the direct supervision of an Aramark mid-level supervisor?

Appellant's brief at 4-6.

"[S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1221 (Pa. 2002); Pa.R.C.P. No. 1035.2(1). As this Court reiterated in *Nationwide Mut. Fire Ins. Co. v. Modern Gas*, 143 A.3d 412, 415 (Pa.Super. 2016) (quoting *Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186, 195 (Pa.

2007)), in considering such a motion, "the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party." "[A]ll doubts as to the existence of a genuine issue of material fact" must be resolved against the moving party, and, summary judgment may only be granted "where the right to such judgment is clear and free from all doubt." *Id*.

On appeal, this Court may reverse a grant of summary judgment "if there has been an error of law or an abuse of discretion." **Nationwide Mut. Fire Ins. Co.**, **supra** at 415. Our standard of review is *de novo* because "whether there are no genuine issues as to any material fact presents a question of law" that we review in the context of the entire record. **Summers v. Certainteed Corp.**, 997 A.2d 1152, 1159 (Pa. 2010). Hence, "we need not defer to the determinations made by the lower tribunals." *Id*. In short,

> our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a prima facie cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

**Babb v. Ctr. Cmty. Hosp.**, 47 A.3d 1214, 1223 (Pa.Super. 2012) (citations omitted) (quotations omitted).

Nurse Hodge contends first that Mr. Varga was the borrowed servant of Aramark or the dual servant of Aramark and the Hospital as Aramark had

- 7 -

the obligation and right to control the manner in which he performed his custodial duties. Thus, she maintains that Aramark is subject to vicarious liability for its servant's negligence. At the very least, Nurse Hodge argues, the evidence presented a genuine issue of material fact as to who had the right to control the custodian that precluded the entry of summary judgment.

Nurse Hodge relies upon *Sidekum v. Animal Rescue League*, 45 A.2d 59, 62 (Pa. 1946), and *Lane v. Schacht*, 393 A.2d 1015 (Pa.Super. 1978), for the proposition that the right of control of a borrowed servant is a jury question so long as different inferences can be drawn from the testimony. *See also English v. Lehigh Cty. Auth.*, 428 A.2d 1343, 1348 (Pa.Super. 1981) (holding that in making such a determination, "any discrepancies in the facts would be for a jury to resolve"). She maintains that a jury question was presented herein and offered the following evidence in support of her position.

The Hospital entered into a contract with Aramark for management services in three areas: food service, environmental services and room revitalization ("EVS"), and linen distribution services. Included in the description of EVS services was the regular maintenance of the floors in the area where Nurse Hodge slipped and fell. Under the agreement, the Hospital provided and paid all service employees Aramark deemed reasonably necessary to provide efficient management services, and Aramark trained

and managed those employees in accordance with Hospital policies. Management Services Agreement, at 8 ¶ 5(b). An exhibit to the agreement further provided that "Aramark will provide an on-site manager for the EVS program" who "will coordinate the management and the activities of the Service Employees within the EVS Department, which personnel will be provided by, and will be employees of" the Hospital. Exhibit EVS at 1. The duties of the EVS manager included consulting and making recommendations of housekeeping services, staffing levels, implementing procedures, developing job descriptions and performance standards for each position, training, and conducting team meetings for training. *Id*.

The Director of Environmental Services for Aramark was Ken Atkins, and fifty-three persons reported to him. He testified in his deposition that the right to control the manner of mopping the floors rested with the custodian's supervisor, who in this instance was an Aramark employee. He also confirmed that management teams, consisting of both Hospital and Aramark employees, were responsible for daily, weekly, and monthly inspections, and all of these supervisors reported to him. Mr. Atkins prepared the matrix using Aramark software that collected data from inspections and used the information for on-the-spot coaching. Aramark also devised and was responsible for completing a custodial housekeeper competency form for each employee that was kept by Aramark and, at the Hospital's request, not placed in the Hospital personnel file.

Against this backdrop, Nurse Hodge offered evidence that custodian Chuck Varga was filling in for another custodian on the evening in question. Mr. Varga wet mopped the floor of the scrub room between two operating rooms shortly before 5:00 p.m. He did not place a sign warning that the floors were wet because he thought the adjacent operating rooms would not be in use for the remainder of the night. When he realized that someone was in the freshly mopped area, he called out a warning, but he was too late. Nurse Hodge had slipped on the wet floor.

After attending to Nurse Hodge and obtaining assistance from emergency personnel, Mr. Varga went to Aramark's director Ken Atkins and reported what had occurred. He accepted responsibility for failing to erect a wet floor sign after mopping the floor. Mr. Atkins issued an "Employee Disciplinary Notice" for a safety violation consisting of Mr. Varga's "Failure to post wet floor signs as assigned." Employee Disciplinary Notice, 6/6/14, at 1. The reason given for disciplinary action was Mr. Varga's "Failure to perform duties as assigned or in a satisfactory manner. 'Created an unsafe condition or contributing to such conditions'" *Id*. It provided further for in-service "on safety procedures when performing wet floor tasks" and close monitoring of the proper placement of safety cones on wet floors. *Id*.

Aramark characterizes its role as that of a consultant making recommendations, conducting reviews, and creating a plan. It disclaims responsibility for the actions of Mr. Varga and denies that he was its

borrowed servant or that Aramark and the Hospital were joint employers. The trial court repeatedly refers to Aramark as a consultant and describes its role as "mere supervision." Trial Court Opinion, 10/25/16, at 8.

The court examined our sister court's discussion of the borrowed servant doctrine in **Red Line Express Co. v. W.C.A.B. (Price)**, 588 A.2d 90 (Pa.Cmwlth. 1991). In that case, Princeton Management had a contract with Red Line Express to provide truck drivers. Claimant was a truck driver who was injured after falling off the truck. Claimant filed two claim petitions, one against Princeton and the other against Red Line, and the question was which party was the employer for purposes of worker's compensation. The Commonwealth Court noted preliminarily that, under prevailing law, there was a presumption that the claimant was an employee of Princeton unless there was evidence that Red Line assumed control over the manner in which claimant performed the work. Although Red Line owned the tractor and it remained under its control, and the lease indicated that claimant was to remain a Princeton employee, the determining factor was who had the power to control claimant's work and manner of performance. The evidence revealed that claimant reported to Princeton and Princeton instructed her which route to take on at least one of her deliveries. Red Line merely told her where to pick up a load and deliver it, and did not instruct her which routes to take or what hours to work. Moreover, the claimant could refuse a Red Line load and Princeton retained the right to

instruct her to haul a load for another entity. Princeton retained the right to fire the driver. On these facts, our sister court found that Red Line did not have the power to control the manner in which the claimant performed her work.

Unlike the facts in **Red Line Express**, **supra**, herein there was considerable evidence that Aramark controlled the manner in which custodial services were performed by Mr. Varga. There was certainly sufficient evidence to present a jury question as to whether Mr. Varga was a borrowed servant to subject Aramark to vicarious liability for Mr. Varga's negligence. As this Court recently reiterated in **Westfield Ins. Co. v. Astra Foods, Inc.**, 134 A.3d 1045 (Pa.Super. 2016) (quoting **JFC Temps, Inc. v. Workers' Comp. Appeal Bd. (Lindsay)**, 680 A.2d 862, 864 (Pa. 1996),

> The test for determining whether a servant furnished by one person to another becomes the employee of the person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done but also to the manner of performing it. The entity possessing the right to control the manner of the performance of the servant's work is the employer, irrespective of whether the control is actually exercised. Other factors which may be relevant include the right to select and discharge the employee and the skill or expertise required for the performance of the work. The payment of wages may be considered, but is not a determinative factor. Although the examination of these factors guides the determination, each case must be decided on its own facts.

There is no dispute that Mr. Varga was hired by the Hospital and that the Hospital paid his salary. While those considerations are factors in determining who is the employer, it is the entity with the right to control the

manner of the performance of the servant's work that is the employer. ***JFC Temps, Inc.***, ***supra***. The Hospital supplied Mr. Varga and its other custodial employees to Aramark to enable it to furnish the services contemplated under the Management Services Agreement. Aramark was charged with the training, scheduling, daily supervision, and evaluation of those employees. Aramark had the right to control the manner of the performance of the servant's work, as evidenced by the fact that it regularly inspected and evaluated the custodians. Aramark, not the Hospital, disciplined Mr. Varga and required that he be in-serviced in safety procedures when performing floor tasks and that his performance be monitored closely. Aramark notified Mr. Varga that failure to follow these directives "will result in further discipline." Employee Disciplinary Notice, 6/6/14, at 1. For five days after the incident, Aramark directed supervisors and managers to review floor safety with the other custodians.

Aramark places too much reliance upon the terms of the Management Services Agreement. The proviso that employees like Mr. Varga were employees of the Hospital, not Aramark, does not control our determination. ***See Red Line Express Co.***, ***supra*** (lease provision conferring lessee with exclusive possession and control of equipment was not conclusive in determining who was employer). Even Aramark concedes that Nurse Hodge was not bound by that contract and was free to plead and prove facts showing a different relationship. ***See*** Appellee's brief at 35.

- 13 -

Viewing the evidence in the light most favorable to Nurse Hodge, as the non-moving party, we are persuaded that a reasonable juror could conclude that Aramark controlled the daily performance of the custodians' duties. One can reasonably infer from Aramark's disciplinary action against Mr. Varga that it had the right to discipline errant employees. Nurse Hodge has offered sufficient proof that Mr. Varga was acting as Aramark's servant when he negligently failed to place signs warning of the dangerous wet floors to subject that entity to vicarious liability for the negligence of its servant in negligently creating the hazardous condition. We find that there are genuine issues of material fact surrounding the issue of whether Mr. Varga was the borrowed servant of Aramark at the time Nurse Hodge was injured to preclude the entry of summary judgment.

Based on our disposition of Nurse Hodge's first and second issues, we need not reach her two remaining issues. If Nurse Hodge is ultimately successful on her borrowed servant/dual employer theory, she would not need to prove that Aramark was negligent in its supervision and training of Mr. Varga regarding the placement of warning signs to indicate wet mopped floors as Aramark would be vicariously liable for its servant's admitted negligence.

Failing that, Nurse Hodge must establish that Aramark owed her a duty, that it breached that duty, and that the breach resulted in injury and actual damages. Although Aramark asserts there was no evidence of

inadequate training or supervision regarding the universal placement of warning signs to indicate wet floors, we disagree. Mr. Atkins testified that, regardless of the time of day or night, it is a safety violation not to place a sign warning of wet floors. Deposition of Ken Atkins, 1/20/16, at 38. It was unacceptable according to Mr. Atkins for Mr. Varga to believe that placement of a warning sign was not required after hours or when the area was unoccupied. *Id*. Mr. Varga's admission that he thought a sign was unnecessary in these circumstances supports a reasonable inference that Aramark's training and supervision was deficient in this regard.

For the foregoing reasons, we reverse the order granting summary judgment in favor of Aramark and remand for further proceedings consistent herewith.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/5/2017