# Puhlman et al., Appellants, *v.* Excelsior Express and Standard Cab Company.

*Negligence—Master and servant—Cab company—Hire of team and driver—Driver assisting in hirer's work—Special and general employment—Negligence of driver—Injury to hirer's employee— Action against cab company — Respondeat superior — "Carriage cases" distinguished.*

1. There can be no recovery against one charged with negligence upon the principle of respondeat superior unless it be made to appear that the relation of master and servant in fact existed, and that the servant was within the scope of his employment.

2. Where one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as a servant of the man to whom he is lent, although he remains the general servant of the person who lent him.  The test is whether, in the particular service which he is engaged to perform, he continues subject to the direction and control of his master, or becomes subject to that of the party to whom he is lent or hired.

3. In an action against an express company brought by an employee of an electric company to recover for personal injuries, it appeared that the electric company had hired from the defendant

the services of a horse, wagon and driver to assist in the erection of poles and wires; that the defendant sent each morning to the electric company a man and wagon to remain in their service during the day; that the employees of the electric company rode in the wagon, and that the material to be used in putting up wires and poles was carried in it wherever occasion required; that the duties of the driver were to drive wherever he was directed by the electric company's foreman, to assist with the team in pulling down and putting up poles pursuant to the direction of the foreman; that the driver, in response to plaintiff's request to hand him a chisel, threw it to him in such a manner as to strike him on the knee, causing the injuries complained of. *Held,* the driver was under the direction and control of the foreman of the electric company and, therefore, in the latter's special employ at the time, and a compulsory nonsuit was properly entered.

4. Plaintiff failed to show affirmatively that handing tools from the wagon was a duty which defendant company engaged to perform, or that defendant employed the driver to discharge that duty.

5. The "carriage cases" are distinguished from this case by the fact that in those cases the driver is only under the control of the hirer to the extent of indicating the destination to which the latter wishes to be driven.

Argued Oct. 11, 1917. Appeal, No. 94, Oct. T., 1917, by plaintiffs, from judgment of C. P. Allegheny Co., July T., 1914, No. 2196, refusing to take off compulsory nonsuit in case of Edmund E. Puhlman, a Minor, by His Next Friend and Father, Carl H. Puhlman, and Carl H. Puhlman in His Own Right, v. Excelsior Express and Standard Cab Company. Before MESTREZAT, POTTER, STEWART, MOSCHZISKER and WALLING, JJ. Affirmed.

Trespass for personal injuries. Before SHAFER, P. J.

The facts appear by the opinion of the Supreme Court.

The lower court entered a compulsory nonsuit which it subsequently refused to take off. Plaintiffs appealed.

*Error assigned* was in the refusal to take off the nonsuit.

*Rody P. Marshall,* of *Rody P. & Meredith R. Marshall,* with him *Oliver K. Eaton,* for appellants.—The driver

was an employee of the defendant at the time of the negligent act: Caldwell v. Brown, 53 Pa. 453; Lehigh Valley Coal Co. v. Jones, 86 Pa. 432; Lewis v. Seifert, 116 Pa. 628; Mullan v. Philadelphia & Southern Mail Steamship Co., 78 Pa. 25; Bentley, Shriver & Co. v. Edwards, 100 Md. 652; Laugher v. Pointer, English Common Law Rep. Vol. II, 579; Quarman v. Burnett, Meeson & Welsby's Rep. (Exchequer) Vol. 6, 499; Wallace v. Keystone Automobile Co., 239 Pa. 110.

The fellow servant rule is not applicable in the present case: Murray v. Dwight, 161 N. Y. 301; Winona Technical Institute at Indianapolis v. Stolte, 173 Ind. 39; Otis Steel Co. v. Wingle, 152 Fed. Rep. 914; Coates v. Chapman, 195 Pa. 109.

The driver was within the scope of his duty as an employee of the defendant: Fuhrmeister v. Wilson et al., 163 Pa. 314; Philadelphia, Wilmington & Baltimore R. R. Co. v. Brannen, 17 W. N. C. 227; Guinney v. Hand, 153 Pa. 404.

Where a question is a mixed question of fact and law it is for the jury: Elmer v. Pittsburgh Railways Co., 251 Pa. 505; Goehring v. Beaver Valley Traction Company, 222 Pa. 600.

*A. M. Thompson,* of *Gray, Thompson & Rose,* for appellee.—The burden is upon the plaintiff to show that the negligent act upon which the complaint is based was performed by one who bore such relation to the defendant that the defendant is responsible for his negligent act under the doctrine of respondeat superior: Rourke v. The White Moss Colliery Co., 2 L. R. C. P. D. 205; Donovan v. Laing et al. Construction Co., 1 Q. B. (C. A.) 629.

The rule of the "carriage cases" does not apply to the present facts: Byrne v. Kansas City, Etc., Co., 61 Fed. Rep. 605; Powell v. Construction Co., 88 Tenn. 692; Atwood v. Chicago, R. I. & P. Ry. Co. et al., 72 Fed. Rep.

447; Johnson v. Western New York & Penna. **Ry. Co.,**
200 Pa. 314.

The driver was not acting within the scope of his authority at the time of the injury.

OPINION BY MR. JUSTICE POTTER, January 7, 1918:

Edmund E. Puhlman, an employee of the Duquesne Light Company, was injured through the negligence of one Joseph Elkman. Contending that the latter was at the time of the accident employed by the Excelsior Express and Standard Cab Company, and was acting within the scope of his employment, the plaintiff brought this suit against the cab company, to recover from it damages for the injury which he sustained. The facts were not in dispute, and, as stated by the court below, were as follows: "The Duquesne Light Company hired from the defendant the services of a horse, wagon and driver to assist in its erection of poles and wires. The method of procedure was for the defendant to send each morning to the place of business of the Duquesne Light Company, a man and wagon, which was to remain in their service during the day. The employees of the Duquesne Light Company rode in the wagon, and the material to be used in putting up wires and poles was carried in the wagon to wherever the Duquesne Light Company had occasion to work, and there the driver of the wagon did whatever he was directed to do in the use of the horse, unhitching it from the wagon so as to help arrange the poles, and going from place to place with the wagon as directed by the foreman of the Duquesne Light Company. The plaintiff having occasion to get a chisel, which had been brought out in the wagon, went to the wagon on which the driver was, and asked for the chisel. The driver thereupon picked it up and threw it to the plaintiff in such a manner that it struck him on the knee and caused a severe injury."

At the trial, a compulsory nonsuit was entered, upon the ground that the evidence showed that, when the acci-

dent occurred, Elkman was, for the time being, in the employ of the Duquesne Light Company, and not in that of defendant. From the refusal to take off the nonsuit, plaintiff has appealed. While Elkman was in the general service of the express and cab company, yet, in the opinion of the trial judge, it clearly appeared from the evidence that he was at the time in the particular service of the light company, and was under its direction and control. The trial judge, therefore, followed the general rule of law stated in 26 Cyc. L. & Pr. 1285, as follows: "Where one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as a servant of the man to whom he is lent, although he remains the general servant of the person who lent him. ......The test is whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master, or becomes subject to that of the party to whom he is lent or hired." The same rule is formulated in the opinion in Standard Oil Co. v. Anderson, 212 U. S. 215, as follows (p. 220): "One may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person with all the legal consequences of the new relation."

In the present case, if plaintiff is to recover damages, it is incumbent upon him to show, by affirmative proof, that the person whose negligence caused the injury was the servant of defendant, and that the injury was inflicted while he was acting within the scope of his employment as such servant. Thus in Patton v. Mc-Donald, 204 Pa. 517, we said (p. 523): "There can be no recovery against one charged with negligence upon the principle of respondeat superior, unless it be made to appear that the relation of master and servant in fact existed, whereby the negligent act of the servant was

legally imputable to the master." And in 7 Labatt on Master & Servant (1913), Sec. 2513, stating the principle, it is said: "The rule respondeat superior operates only in respect of cases in which it is established by affirmative testimony that, at the time when the given tort was committed, the relationship of master and servant, or of principle and agent, existed between the party whom it is sought to affect with liability and the actual tort-feasor. Accordingly, a plaintiff whose claim is founded upon the rule cannot succeed if the evidence is insufficient to prove that the tort-feasor was a servant of the defendant, or requires the inference that...... though regularly in the employ of the defendant, he was temporarily under the control of another person on the occasion when the injury complained of was inflicted."

In the case at bar, plaintiff depended for proof of the duties which Elkman had been employed to perform entirely on testimony as to what he actually did, with the exception of defendant's admission that he was in charge of the horse and wagon when the accident occurred. The evidence showed that Elkman did three things: (1) he drove the team wherever he was directed to go by the foreman of the Duquesne Light Company; (2) he assisted with the team in pulling down and putting up poles following the directions of the foreman in so doing; and (3) he handed out the tools to the workmen, when neither the foreman nor any other of the men was on the wagon.

The operation in which Elkman was concerned was conducted solely by the light company, and he was bound to obey the orders of its foreman in the work which he did. The defendant company gave up the right to control his movements during the course of the particular work in which he was engaged, and that right of control was in the light company.

Counsel for appellant have cited a number of decisions known as the "carriage cases," in which vehicles in care of a driver have been loaned or let by the owner to an-

other person.  In such cases the general master is held to continue liable for his servant's negligence in driving, loading or unloading, though the latter takes his orders as to driving, or as to loading or unloading, from the party to whom the conveyance has been loaned or hired. An examination of all the cases cited to this effect shows that they were either instances where the accident was caused by negligent driving, or management of the vehicle driven, or in the loading or delivery of merchandise which the master had been employed to carry, and in none of them had the master parted with his control over his servant.  Wallace v. Automobile Co., 239 Pa. 110, is an example.  Mr. Justice MESTREZAT there said (p. 117) : "The rule of respondeat superior applies.  The chauffeur and the car were furnished by the defendant company, and he had control of and operated the car for the company.  The negligence of the chauffeur is the negligence of his employer, and for injuries resulting therefrom the latter is responsible."

In the case at bar the accident did not result from any negligence in driving or in the management of the horse and wagon.  Nor can it be said that it resulted from negligence in unloading anything which defendant was employed to deliver.  Elkman may at times have handed down tools from the wagon, but there is no evidence that the defendant company was under contract to carry or deliver any such tools.  They were incidental to the work of the employees of the light company, and were evidently placed upon the wagon by the servants of that company, and, if the driver handed them out, it was merely as a convenience to the light company's foreman, when the latter was not himself there to perform that duty.

In Donovan v. Laing et al., L. R. (1893), 1 Q. B. 629, cited by counsel for appellee, the distinction between the carriage cases and one like the present is pointed out by the Master of the Rolls, Lord Esher.  As he says, the coachman is only under the control of the hirer to the ex-

tent of indicating the destination to which he wishes to be driven; and, in distinguishing the control of the owner in such a case from that in the instance before him, he said : "In the present case the defendants parted for a time with control over the work of the man in charge of the crane, and their responsibility for his acts ceased for the time."

In Byrne v. Kansas City, Etc., R. R., 61 Fed. Rep. 605, cited by the court below, and referred to more fully in the argument for appellee, the carriage cases are distinguished, with the final comment that "It is manifest, therefore, that they have no application whenever it appears that the master has parted to another, for a time, with control over his servant, to be used in the work of that other."

Counsel for appellants contend that the question whether the negligent act of Elkman was within the scope of his employment by the defendant, was for the jury. But they offered no evidence sufficient to sustain a finding by the jury in their favor upon that question. They showed merely that defendant put Elkman in charge of the horse and wagon, and then placed him under the control and direction of the light company. They failed to show affirmatively that handing tools from the wagon was a duty which the defendant company engaged to perform, or that defendant employed Elkman to discharge that duty. The tools all belonged to the light company, and were manifestly under the control of its foreman. The case is essentially different from one in which a master contracts to haul and deliver goods, and sends his servant to perform that work for him. We think the evidence clearly justifies the conclusion that Elkman, while in charge of the horse and wagon, and while assisting the workmen of the electric light company, was under the direction and control of the foreman of that company, and that the defendant company did not retain control over him in the work he was doing at that time.

The assignment of error is overruled, and the judgment is affirmed.