603 A.2d 659

**Harry C. WILKINSON and Patricia Wilkinson, h/w, Appellants,**

v.

**K-MART.**

Superior Court of Pennsylvania.

Argued Dec. 17, 1991.

Filed Feb. 26, 1992.

Joseph S. Viola, Feasterville, for appellants.

Thomas L. Delevie, Philadelphia, for appellee.

Before CAVANAUGH, FORD ELLIOTT and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from the order entered on May 22, 1991 granting appellee K–Mart Corporation's motion for summary judgment and dismissing all claims against K–Mart with prejudice. Appellants, Harry and Patricia Wilkinson, raise the following issues:

The Court of Common Pleas improperly granted defendant's motion for summary judgment as there exists numerous unresolved material factual issues.

K–Mart argues that by giving directions to Harry Wilkinson and controlling his day to day operations it employs Harry Wilkinson as a "borrowed servant." However caselaw confirms that Harry Wilkinson is an independent

contractor because K-Mart does not control his manner of performance.

According to the agreement between K-Mart and Transco Logistics Corporation, Harry Wilkinson is deemed an employee of Transco; K-Mart argues contra.

Harry Wilkinson is not a "borrowed servant" because he possesses skills and special training and required no instruction on how to perform his duties; he is an independent contractor.

Appellant's Brief at 2. For the following reasons, we affirm.

Appellant Harry Wilkinson was employed by Transco Logistics Corporation (hereinafter "Transco") and was operating a truck for appellee K-Mart Corporation (hereinafter "K-Mart") pursuant to a contract which existed between Transco and K-Mart. On July 8, 1985, Mr. Wilkinson was injured when the parcels in his truck fell forward while he was unloading the truck. On July 7, 1987, the Wilkinsons filed a complaint in trespass against K-Mart, alleging that K-Mart was negligent in its loading of the truck. K-Mart filed a motion for summary judgment, asserting that it was Mr. Wilkinson's statutory employer under the borrowed servant doctrine of the Pennsylvania Workmen's Compensation Act.[1] On May 22, 1991, summary judgment was entered in favor of K-Mart dismissing the Wilkinsons' claims. This timely appeal followed.

Our standard of review of an order granting summary judgment is well-settled:

As an appellate court, we are bound to consider certain principles which dictate when and under what circumstances a trial court may properly enter summary judg-

---

1. Section 481 of the Workmen's Compensation Act, in relevant part, provides:

(a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employer, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

77 Pa.C.S.A. § 481.

ment. *Goebert v. Ondek*, 384 Pa.Super. 100, 103–04, 557 A.2d 1064, 1066 (1989). The trial court must accept as true all well-pleaded facts in the non-moving party's pleadings, and give to him or her the benefit of all reasonable inferences to be drawn therefrom. *Jefferson v. State Farm Insurance*, 380 Pa.Super. 167, 170, 551 A.2d 283, 284 (1988). Summary judgment should not be entered unless the case is clear and free from doubt. *Hathi v. Krewstown Park Apartments*, 385 Pa.Super. 613, 615, 561 A.2d 1261, 1262 (1989). A grant of summary judgment is proper where the pleadings, depositions, answers to interrogatories and admissions on file support the lower court's conclusion that no genuine issue of material fact exists and that the moving party is entitled to judgement as matter of law. Pa.R.C.P. No. 1035, 42 Pa.C.S.A.; *Hatter v. Landsberg*, [386 Pa.Super. 438, 440, 563 A.2d 146, 147–48 (1989)]. *See Penn Center House, Inc. v. Hoffman*, 520 Pa. 171, 176, 553 A.2d 900, 903 (1989) (entire record before lower court must be thoroughly examined and all doubts as to the existence of a genuine issue of material fact are to be resolved against a grant of summary judgment). We will overturn a trial court's entry of summary judgment only if there has been an error of law or a clear abuse of discretion. *McCain v. Pennbank*, 379 Pa.Super. 313, 318, 549 A.2d 1311, 1313 (1988).

*O'Neill v. Checker Motors Corp.*, 389 Pa.Super. 430, 434–35, 567 A.2d 680, 682 (1989).

The Wilkinsons' first contention is that the trial court erred in entering summary judgment because there existed numerous unresolved material issues of fact. However, they do not specifically state what the issues of fact are. Instead they argue that Mr. Wilkinson was not a borrowed servant of K–Mart for purposes of workmen's compensation. This is an issue of law, not of fact.

█ The issue of whether an employer is a "statutory employer" for purposes of the Workmen's Compensation Act is properly the subject of a motion for summary judg-

ment, as "whether the facts as they are determined to exist constitute an employment relationship is strictly a question of law." *Keller v. Old Lycoming Twp.*, 286 Pa.Super. 339, 345, 428 A.2d 1358, 1361 (1981). *See also English v. Lehigh County Authority*, 286 Pa.Super. 312, 428 A.2d 1343 (1981). Accordingly, we interpret the Wilkinsons' contention to be that the trial court reached an erroneous legal conclusion when it granted summary judgment. We disagree.

Under the Workmen's Compensation Act, the term "employer" and "employee" are synonymous with "master" and "servant". *Cookson v. Knauff*, 157 Pa.Super. 401, 404, 43 A.2d 402, 405 (1945). The test for determining the identity of the "true" master when a servant has been loaned to another focuses on the right of control:

The crucial test in determining whether a servant furnished by one person to another becomes the employe of the person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done *but also to the manner of performing it.* [citation omitted]

A servant is the employe of the person who has the *right* of controlling the manner of his performance of the work, irrespective of whether he actually exercises that control or not. [Citations omitted; emphasis in the original] *Mature v. Angelo*, 373 Pa. 593, 97 A.2d 59 (1953).

*Ashman v. Sharon Steel Corp.*, 302 Pa.Super. 305, 314, 448 A.2d 1054, 1058 (1982) (emphasis in original).

"Although opinions considering the matter frequently mention such items as which employer actually hired the servant, and which paid his wages, and which issued his W-2 Form, these are peripheral matters and not controlling." *Ashman v. Sharon Steel Corp.*, 302 Pa.Super. 305, 314, 448 A.2d 1054, 1058 (1982) (citing *English v. Lehigh Co. Authority*, 286 Pa.Super. 312, 428 A.2d 1343 (1981) and cases cited therein). Rather, "[t]he true measure remains the common law definition of the master-servant relationship '... whether ... he continues liable to the direction and control of his master, or becomes subject to that of the

party to whom he is lent or hired.'" *Ashman v. Sharon Steel Corp.*, 302 Pa.Super. 305, 314, 448 A.2d 1054, 1059 (1982) (quoting *Puhlman v. Excelsior Express and Standard Cab Co.*, 259 Pa. 393, 103 A. 218 (1918)). Accordingly, we must now determine whether Transco or K–Mart retained control of the work and its manner of performance.

■ In the instant case, Mr. Wilkinson drove trucks for K–Mart pursuant to a contract between Transco and K–Mart. Under this contract, K–Mart reserved the right to "dispatch, direct the loading and unloading of vehicles, select routes, direct the drivers as to pick-ups, deliveries and other matters related to day-to-day operations of vehicles." Contract, July 3, 1979 at 2. K–Mart employees dispatched the drivers and chose their routes. *See* Deposition of Wilkinson, December 19, 1989 at 8–9. Furthermore, the trucks were owned by K–Mart and bore the K–Mart logo. Mr. Wilkinson delivered only K–Mart cargo, which was already loaded onto the truck when he reported to work at the K–Mart warehouse. Moreover, at the time of the accident, Mr. Wilkinson was paid by K–Mart check, and, pursuant to the K–Mart–Transco contract, K–Mart was billed for the cost of Workmen's Compensation, F.I.C.A. taxes, Pennsylvania unemployment taxes, and federal unemployment taxes.

The Wilkinsons rely on a line of cases holding that the leasing of equipment with operators does not fall within the borrowed servant doctrine. *See Mature v. Angelo*, 373 Pa. 593, 97 A.2d 59 (1953); *Ashman v. Sharon Steel Corp.*, 302 Pa.Super. 305, 448 A.2d 1054 (1982). The Wilkinsons assert that there is no meaningful distinction between these cases and the instant situation. Many cases have found that the leasing of equipment with operators does not fall within the doctrine of borrowed servant for purposes of the Workmen's Compensation Act. However, the instant case involves the leasing of operators *without* equipment. This court has found this distinction meaningful. For example, in *Ashman* we stated that "plaintiff here was supplied in conjunction with the equipment he drove. Under Pennsyl-

vania law, this is a significant distinction." *Ashman v. Sharon Steel Corp.*, 302 Pa.Super. 305, 448 A.2d 1054, 1058 (1982); *see also Supp v. Erie Ins. Exchange,* 330 Pa.Super. 542, 479 A.2d 1037 (1984) (driver who is leased without equipment is employee of lessee for purposes of Workmen's Compensation Act when lessee had power and right to control drivers work-related activities and manner of performance). Both *Ashman* and *Mature* emphasize the fact that the equipment was leased *with* the operator.

In the case of *Lego v. Workmen's Compensation Appeal Board,* 66 Pa.Commw. 593, 445 A.2d 1324, 1326–1327 (1982), the court held that even in a case where the equipment is leased with an operator, the borrowed servant doctrine will apply when the lessee had the right to control the work to be done and also the manner of performing it. Thus, the issue of control remains the crucial test. "The right to instruct a driver as to the route to take indicates the presence of the right to control the manner of performing the driver's work." *Id.,* 66 Pa.Commw. at 599, 445 A.2d at 1327 (1982) (citing *Martin Trucking Co. v. Workmen's Compensation Appeal Board,* 30 Pa.Commw. 367, 373 A.2d 1168 (1977)). Moreover, the court found that the presence of the lessee's logo on the side of the tractor raised a rebuttable presumption that "the one to whom the logo refers is the employer of the operator." *Lego* 66 Pa.Commw. at 600, 445 A.2d at 1327 (citing *Fullerton v. Motor Express Inc.,* 375 Pa. 173, 100 A.2d 73 (1953)).

In the instant case, Mr. Wilkinson testified that K–Mart not only controlled the work to be done, but also controlled the manner of performance by selecting the routes to be used. In addition, all the trucks supplied by K–Mart bore the K–Mart Corporation Logo. Thus, we find that Mr. Wilkinson was a borrowed servant because of the control over his work exercised by K–Mart.

■ The Wilkinsons next contend that the contractual provision which states, "[w]hereas, Lessor (Transco) is desirous of supplying qualified drivers, *who are employees of Lessor,* to K–Mart ..." conclusively establishes that appel-

lant remained the employee of Transco. *See* Contract, July 3, 1979 at 1 (emphasis added). In light of the recent case of *Red Line Exp. Co. v. W.C.A.B.(Price)*, 138 Pa.Commw. 375, 588 A.2d 90 (1991), we disagree. In *Red Line*, the lease at issue stated that the employee was to remain an employee of the lessor. However, the court held that "[a]lthough the provisions of the lease tend to indicate that the Claimant was to remain an employee of Princeton, *the determining factor is the actual conduct of the parties and whether Red Line actually had the power to control Claimant's work and manner of performance.*" *Id.* at 383, 588 A.2d at 94 (emphasis added). Thus, this contention is without merit.

Lastly, the Wilkinsons contend that the borrowed servant doctrine does not apply in cases where the borrowed employee is a specially skilled professional. They rely on *Accountemps v. W.C.A.B. (Myers)*, 120 Pa.Commw. 489, 548 A.2d 703 (1988) to argue that an employee in possession of special skills or training cannot become a borrowed servant. However, they misinterpret the holding of that case. The court in Accountemps held that the borrowing employer did not exercise the control necessary to invoke the borrowed servant doctrine. One factor the court considered was that the employee that was "borrowed" was an accountant who possessed a highly specialized skill. The court stated that "[w]hile Myers had to be told what accounting system Spectrum Arena was using, she did not have to trained nor instructed in how to perform the basic job." *Id.,* 120 Pa.Commw. at 494, 548 A.2d at 706. In the instant case, we have already determined that K–Mart maintained control over Wilkinson as to the manner of performance. Consequently, we do not find *Accountemps* controlling.

In conclusion, the testimony and evidence on the issue of control was uncontroverted and as such the Wilkinsons' assertions are strictly questions of law. For the foregoing reasons, we agree with the trial court's conclusion that K–Mart exercised sufficient control to make it the statutory

employer of Mr. Wilkinson for purposes of the Workmen's Compensation Act. Thus, we affirm the order below.

Order affirmed.