Daniel E. **VIRTUE**, Plaintiff,

v.

**SQUARE D COMPANY**, Advanced Handling Systems, Defendants.

Civ. A. No. 1:CV–94–1328.

United States District Court, M.D. Pennsylvania.

June 1, 1995.

Ira H. Weinstock, Michael A. Koranda, Ira H. Weinstock, P.C., Harrisburg, PA, for Daniel E. Virtue.

John Patrick Kelley, Kelley, Jasons, McGuire & Spinelli, Philadelphia, PA, for Square D Co.

James M. Sheehan, Goldberg, Katzman & Shipman, Harrisburg, PA, for Advanced Handling Systems.

## *MEMORANDUM*

CALDWELL, District Judge.

Pending is the Defendant Square D Company's motion for summary judgment. We exercise jurisdiction pursuant to 28 U.S.C. § 1332.

### I. *Background*

Plaintiff was employed by Olsten Corporation ("Olsten"), a temporary employment agency, and was assigned by Olsten to perform maintenance work at Defendant Square D Company's ("Square D") warehouse. He was injured while operating a motorized forklift at Square D. The forklift collided with the steel frame of a roller line (an apparatus similar to a conveyor belt) and seriously injured Plaintiff's leg. He instituted this action against Square D, alleging that it was negligent in failing to: properly instruct and train him in the operation of the forklift; properly supervise him in the operation of the forklift; regularly inspect and maintain the roller line; warn him of defective conditions in the roller line; and implement preventive measures to eliminate or reduce the hazard posed by the roller line.[1]

### II. *Law and Discussion*

#### A. Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing the evidence, facts and inferences must be viewed in the light most favorable to the nonmoving party. *Matsushita Electric Industrial Co., Ltd., et al. v. Zenith Radio Corp., et al.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 553 (1986). Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party...." *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1356, 89 L.Ed.2d at 552 (citations omitted).

When a moving party has carried his or her burden under Rule 56, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts...." *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1356, 89 L.Ed.2d at 552 (citations omitted). The nonmoving party "must present *affirmative evidence* in order to defeat a properly supported motion for summary judgment", and cannot "simply reassert factually unsupported allegations contained in [the] pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989) (emphasis in original) (citation omitted). However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986) (internal citations omitted).

#### B. "Borrowed Servant" Doctrine

■ Square D argues that it is immune from suit because it was plaintiff's "statutory employer" under the Pennsylvania Workmen's Compensation Act ("the Act"), 77 P.S. § 1 *et seq.* The Act is the exclusive method for securing compensation for injuries incurred in the course of employment if the person from whom compensation is sought is the claimant's employer. 77 P.S. § 481. In determining whether Square D was Plaintiff's statutory employer, "any factual discrepancies are for the trier of fact to resolve." *Keller v. Old Lycoming Twp.*, 286 Pa.Super. 339, 345, 428 A.2d 1358, 1361 (1981). However, where, as here, the facts are not in dispute, "[t]he issue of whether an employer is a 'statutory employer' for purposes of the Workmen's Compensation Act is properly the subject of a motion for summary judgment, as 'whether the facts as they are determined to exist constitute an employment relationship is strictly a question of law.'" *Wilkinson v. K–Mart*, 412 Pa.Super. 434, 437–38, 603 A.2d 659, 660–61 (1992) (citing *Keller*, 286 Pa.Super. at 345, 428 A.2d at 1361).

■ Although Plaintiff was initially employed by Olsten, Square D argues that he was its "borrowed servant" for purposes of the Act. The borrowed servant doctrine provides that "one who is in the general employ of one employer may be transferred to the

---

1. Plaintiff's complaint also contains a strict liability claim against Advanced Handling Systems ("Advanced Handling"), which designed, manufactured, sold, and distributed the roller bar. The claim against Advanced Handling is not at issue in the present motion.

service of another in such a manner that the employee becomes an employee of the second employer." *Red Line Express Co., Inc. v. Workmen's Compensation Appeal Board (Price)*, 138 Pa.Commw. 375, 380, 588 A.2d 90, 93 (1991) (citations omitted). While there is a factual presumption that a transferred employee remains in the employ of his original employer, that presumption is rebuttable by evidence that the borrowing employer assumed "control" over the employee. *See North Penn Transfer, Inc. v. Workmen's Compensation Appeal Board (Michalovicz)*, 61 Pa.Commw. 469, 475, 434 A.2d 228, 230 (1981) (citations omitted).

The test for ascertaining the "true master" of a borrowed employee was set forth by the court in *Wilkinson*:

> the crucial test in determining whether a servant furnished by one person to another becomes the employe of the person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done *but also to the manner of performing it....* A servant is the employe of the person who has the *right* of controlling the manner of his performance of the work, irrespective of whether he actually exercises that control or not.

*Wilkinson*, 412 Pa.Super. at 438, 603 A.2d at 661 (citing *Ashman v. Sharon Steel Corp.*, 302 Pa.Super. 305, 314, 448 A.2d 1054, 1058 (1982) (internal citations omitted) (emphasis in original)); *see also English v. Lehigh County Auth.*, 286 Pa.Super. 312, 428 A.2d 1343 (1981) (whether borrowing employer "controlled or had the right to control borrowed employees, not only with regard to the work to be done but also with regard to their manner of performing it").[2]

The decisions in both *Wilkinson* and *English* are instructive in resolving the present

action. In *Wilkinson*, the plaintiff was injured while unloading parcels from a truck owned by the defendant, K–Mart. He was employed by Transco and, pursuant to a contract between Transco and K–Mart, drove a truck for K–Mart. K–Mart dispatched the trucks, oversaw their loading and unloading, chose the routes, and instructed the drivers as to pick-ups and deliveries. *Wilkinson*, 412 Pa.Super. at 439, 603 A.2d at 661.[3] The trial court granted K–Mart's motion for summary judgment because it was immune under the Workmen's Compensation Act. On appeal, the Superior Court affirmed the lower court's decision, concluding that although the plaintiff was in the general employ of Transco, he was K–Mart's borrowed servant since "K–Mart not only controlled the work to be done, but also controlled the manner of performance...." *Id.* at 440, 603 A.2d at 662.

The facts in *English* are nearly identical to the facts in this action. In that case, the plaintiff was employed by Kelly Labor, a temporary employment agency, and was assigned by Kelly to perform work for the defendant. The plaintiff was injured and sued the defendant. The trial court granted the defendant's motion for summary judgment because it concluded that the defendant was the plaintiff's statutory employer under the Act. On appeal, the plaintiff argued that Kelly, and not the defendant, was his statutory employer because Kelly: (1) paid his wages, unemployment compensation taxes, and workmen's compensation insurance; (2) retained the right to fire or discipline him; (3) had exclusive control over his job assignments; and (4) withheld his taxes from his wages. Nevertheless, the court held that

> [a]lthough Kelly Labor had almost absolute control over which of its workers would service the needs of which of its customers, it had no significant control

---

2. The parties also contend that various other factors, set forth in *Hammermill Paper Co. v. Rust Engineering Co.*, 430 Pa. 365, 370, 243 A.2d 389, 392 (1968) and *Johnson v. Workmen's Compensation Appeal Board (Duboise Courier)*, 158 Pa.Commw. 76, 82–83, 631 A.2d 693, 696 (1993), should be considered in determining whether an employer-employee relationship existed. The courts in those cases held that the factors were relevant to determining whether the plaintiff was

an independent contractor or an employee of the defendant. These factors, if applicable to cases involving borrowed servants, would also support Square D's claim that it was Plaintiff's employer.

3. In addition, K–Mart paid the plaintiff's wages, was billed for plaintiff's workmen's compensation, F.I.C.A. taxes, and state and federal unemployment taxes. *Wilkinson*, 412 Pa.Super. at 439, 603 A.2d at 661.

over the manner in which the workers carried out the work to which they were assigned. Thus, for example, while Kelly Labor was responsible for placing [the plaintiff] into the service of the [defendant], once he arrived Kelly Labor did not purport to instruct [the plaintiff] on how he should carry out the [defendant's] sewage testing program. That was clearly the province of the [defendant]. Kelly Labor had no supervisory personnel of any kind at the job site; nor did it contemplate training its workers to perform the various tasks to which it assigned them at the request of its customers.

*English*, 286 Pa.Super. at 323–24, 428 A.2d at 1349.

In this case, Square D had the right to control both Plaintiff's work and the manner in which it was performed. Even before Plaintiff began his assignment at Square D, he was advised by Olsten to speak with a Square D manager about his responsibilities. [Def.'s Statement of M.F. ¶ 5].[4] Plaintiff's tasks were specifically assigned by Square D, and its employees provided him with instructions, training, and supervision while he was performing services for Square D. [Def.'s Statement of M.F. ¶¶ 9–12, 20–26]. He received no training or instruction from anyone employed by Olsten. [Def.'s Statement of M.F. at ¶¶ 4, 23].

At the time of the accident, Plaintiff was collecting refuse at the request of a Square D employee. [Def.'s Statement of M.F. ¶ 14]. The forklift he was ·operating was supplied by Square D and its employees trained Plaintiff in the proper use of the machine. [Def.'s Statement of M.F. ¶¶ 25, 27, 30]. Additionally, Plaintiff conceded that "[t]he manager who was a Square D employee at the warehouse had the right to control the work that plaintiff was doing." [Def.'s Statement of M.F. at ¶ 29]; [Daniel·Virtue Dep. at 50–51]. These facts conclusively establish that Square D controlled both the nature of Plaintiff's work at the time of the accident, and the manner in which he performed it.

█ Plaintiff contends that there was no employer-employee relationship because Square D's control over him was temporary. This argument is without merit. It was not necessary for Square D to control Plaintiff's work for a significant time in order to establish an employment relationship. Rather, the crucial consideration is who "had control or the right of control over the employee as to the work to be done and the manner of its performance *at the time of the accident.*" *Walton v. Harold M. Kelly, Inc.*, 218 Pa.Super. 28, 32, 269 A.2d 347, 349 (1970) (citation omitted) (emphasis added). Thus, entities who borrow laborers from temporary employment agencies can be statutory employers, and thus immune from suit under section 481 of the Act, even if they exercise control for only a short time. *See, e.g., English*, 286 Pa.Super. at 324, 428 A.2d at 1349.

█ Plaintiff also attaches significance to the fact that Olsten accepted responsibility for the accident with the Pennsylvania Department of Labor and Industry, paid Plaintiff's medical expenses, and, at the mandate of a Worker's Compensation Judge, provided his workmen's compensation benefits. That argument is misplaced. The parties are not bound by their characterization of the relationship. Rather, "the determining factor is the actual conduct of the parties." *Wilkinson*, 412 Pa.Super. at 440, 603 A.2d at 662 (citing *Red Line*, 138 Pa.Commw. at 383, 588 A.2d at 94). Accordingly, even where it is agreed that the borrowed employee is to remain in the employ of the lending employer, courts have nevertheless concluded that the borrowing employer is the employer for workmen's compensation purposes. *Id.* Additionally,. the fact that Olsten accepted responsibility and paid Plaintiff's medical expenses and compensation benefits does not affect our determination that Square D was his statutory employer. *See Supp v. Erie Ins. Exchange*, 330 Pa.Super. 542, 550, 479 A.2d 1037, 1041 (1984) (lending employer's payment of workmen's compensation insurance not an impediment to finding the borrowing employer immune from suit under the

---

**4.** Plaintiff admitted that each of the Defendant's Statements of Material Fact are correct. [Pl.'s Counterstatement of Material Facts ¶¶ 1–30].

Act); *Keller,* 286 Pa.Super. at 351, 428 A.2d at 1362; *English,* 286 Pa.Super. at 325, 428 A.2d at 1350; *Guffey v. Logan,* 563 F.Supp. 951, 956 (E.D.Pa.1983).

Plaintiff's final argument is that he was Olsten's employee because it paid his hourly wages. However, items such as "which employer actually hired the servant, which paid his wages, and which issued his w–2 form . . . are peripheral matters and not controlling." *Ashman v. Sharon Steel Corp.,* 302 Pa.Super 305, 314, 448 A.2d 1054, 1058 (1982) (citations omitted); *see also Venezia v. Philadelphia Electric Co.,* 317 Pa. 557, 558, 177 A. 25, 26 (1935) (paying wages is not a decisive factor).

Because we conclude that Plaintiff was under the control of Square D at the time of his accident, it was his employer for purposes of the Pennsylvania Workmen's Compensation Act, 77 P.S. § 481.[5]

We will issue an appropriate order.

### *ORDER*

AND NOW, this 1st day of June, 1995, upon consideration of Defendant Square D Company's motion for summary judgment, filed March 1, 1995, it is ordered that:

1. The motion is granted.

2. The Clerk of Court shall enter judgment in favor of Square D Company and against the Plaintiff.

---

**5.** Plaintiff also argued that Square D's motion should be delayed because he did not have a reasonable opportunity to gain access to relevant facts within the exclusive control of Square D. On April 12, 1995, we granted Plaintiff thirty days to conduct additional discovery and an opportunity to file a supplemental brief. However, on May 18, 1995, Plaintiff advised the Court that the additional discovery had uncovered no new facts or evidence.