# Dempster v. Waste Management Inc.

C.P. of Allegheny County, no. GD96-11731.

*Theodore E. Breault,* for plaintiff.
*L. John Argento,* for defendant.

WETTICK, *J.,* May 5, 1998—The subject of this opinion and order of court is Waste Management Inc.'s motion for summary judgment. Plaintiff has sued Waste Management to recover damages which he sustained when he was injured while riding on the rear step of a Waste Management truck. In this motion for summary judgment, Waste Management seeks dismissal of plaintiff's claims on the ground that at the time of the accident Waste Management was plaintiff's employer under the borrowed servant doctrine and is therefore immune from suit under section 481 of the Pennsylvania Workers' Compensation Act, Act of June 2, 1915, P.L. 736, 77 P.S. §481. Section 481 provides that an employer shall not be liable to an employee in any action at law on account of any injury which the employee sustained during the course of his employment. Waste Management relies on established Pennsylvania case law which both imposes the obligation on a borrowing employer to provide workers' compensation benefits to a borrowed employee and provides the immunity protections of the Workers' Compensation Act to the borrowing employer. *JFC Temps Inc. v. W.C.A.B. (Lindsay),* 545 Pa. 149, 680 A.2d 862 (1996); *Wilkinson v. K-Mart,* 412 Pa. Super. 434, 603 A.2d 659 (1992); *English v. Lehigh County Authority,* 286 Pa. Super. 312, 428 A.2d 1343 (1981).

At the time of the accident, plaintiff was an employee of Network Industrial Inc., a temporary employment agency. Network had a contract with Waste Management under which it provided temporary laborers to Waste Management. At Network's direction, on December 30, 1995, plaintiff reported to the Ambridge facility of Waste Management as a potential temporary thrower/helper. On that date, Waste Management conducted an orientation for temporary employees which consisted of viewing films and listening to supervisors' presentations. Waste Management determined that plaintiff was qualified for the position of thrower/helper and directed him to report for work on January 2, 1996.

From January 2, 1996 through March 8, 1996, this being the date of the accident that is the subject of this litigation, plaintiff worked as a temporary thrower/helper. For the first two weeks, he worked with the same driver for his initial training. Thereafter, Waste Management assigned plaintiff to various trucks and drivers, depending upon Waste Management's needs. During this two-month period, plaintiff worked regularly as a thrower/helper, averaging close to 40 hours per week.

Plaintiff reported to work in the early morning of March 8, 1996. He was assigned by Waste Management to a specific truck. At the time of the accident, plaintiff was standing on a rear step of the truck. The accident occurred when the truck unexpectedly slid backwards into a brick building pinning plaintiff between the truck and the building.

Throughout the approximate two-month period that plaintiff performed work for Waste Management, in-

cluding the date of the accident, Waste Management set plaintiff's hours, schedule, and duties. No one from Network had any involvement in deciding the particular work that plaintiff performed, the manner in which plaintiff would perform the work, the hours that plaintiff worked, or the Waste Management driver to whom plaintiff was assigned. No one from Network provided any instructions to plaintiff regarding the performance of his duties as a thrower/helper. Waste Management determined the work that plaintiff performed and the manner in which he performed the work.

Prior to his assignment to Waste Management, plaintiff executed a writing (Policies and Procedures Checklist of Network Industrial Inc.) which stated that plaintiff understood that he was an employee of Network and that only Network could terminate his employment. The writing provided that if plaintiff cannot make it to work or will be late, he is to contact Network so that Network may call its client and/or find a replacement. The writing further provided that Network pays its employees once a week with checks to be distributed at the work site or mailed directly to the employee's home according to each job site's specification. Pursuant to this writing, Network paid plaintiff's wages during the period that he was assigned to Waste Management and made the necessary state and federal tax deductions and payments. Network also maintained a personnel file for plaintiff—Waste Management did not do so because plaintiff was a temporary helper.

Network assigned plaintiff to Waste Management pursuant to a March 2, 1995 temporary service agreement between Waste Management and Network. The agreement provided that Waste Management is an inde-

pendent contractor and that Network's employees assigned to perform work for Waste Management are solely the employees of Network. The agreement further provided that Network will carry workers' compensation insurance (minimum limit of liability—$1,000,000) that shall name Waste Management as an additional insured with Network to furnish certificates of insurance and endorsements evidencing such coverage.

Only Network had the authority to discipline plaintiff or to terminate plaintiff's employment with Network. However, at any time Waste Management could terminate plaintiff's assignment to Waste Management, in which case plaintiff would report to Network for another assignment.

At the time of the accident, Network had a policy of workers' compensation insurance with State Workmen's Insurance Fund. After plaintiff's accident, Network filed an employer's report of occupational injury which stated that Network was plaintiff's employer and that Network was responsible for the workers' compensation benefits. Plaintiff has received workers' compensation benefits pursuant to this policy.

The case law which Waste Management cites supports its position that for workers' compensation purposes, including its immunity provisions, plaintiff was Waste Management's employee at the time of the accident.

In *JFC Temps Inc. v. W.C.A.B. (Lindsay), supra,* the Pennsylvania Supreme Court addressed the issue of when an employer-employee relationship exists under the law governing the borrowed employee doctrine. The court stated that:

"The test for determining whether a servant furnished by one person to another becomes the employee of

the person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done but also to the manner of performing it. . . . The entity possessing the right to control the manner of the performance of the servant's work is the employer, irrespective of whether the control is actually exercised. . . . Other factors which may be relevant include the right to select and discharge the employee and the skill or expertise required for the performance of the work. . . . The payment of wages may be considered but is not a determinative factor." *Id.* at 153, 680 A.2d at 864. (citations omitted)

The issue that the court addressed in *JFC Temps* was whether workers' compensation benefits should be provided by the temporary employment agency which employed plaintiff or by the entity to which the employee was assigned, G&B. The employment agency assigned the claimant to G&B as a tractor-trailer driver. The claimant reported daily to G&B where the operations manager informed him of work hours, what truck to use, and where to go. Once the claimant was temporarily assigned to G&B, the employment agency did not instruct him regarding the performance of his work. It had no substantial contact with the claimant other than processing his paycheck.[1]

---

1. The employment agency determined and paid the claimant's salary although his time slips were completed and signed by G&B personnel. The claimant would call the employment agency if he was late or ill or if he had any questions. If he was unable to work, the employment agency would provide G&B with a replacement. It was G&B's decision whether the claimant's work was satisfactory. If G&B was not satisfied with the claimant's work, G&B could request a replacement for the claimant; however, G&B could not fire the claimant.

The court held that since G&B had the right to control the manner of performance of the claimant's work, for workers' compensation purposes, G&B was the claimant's employer and thus responsible for payment of workers' compensation benefits. In reaching this result, the Supreme Court relied on and cited with approval the Superior Court decisions in *Wilkinson v. K-Mart, supra,* and *English v. Lehigh County, supra.*

In *Wilkinson,* the plaintiff, an employee of Transco, was operating a truck for K-Mart Corporation pursuant to a contract between Transco and K-Mart. He was injured when the parcels in his truck fell forward while he was unloading the truck. He brought a personal injury action against K-Mart alleging that it had negligently loaded the truck. K-Mart filed a motion for summary judgment, asserting that the plaintiff was a statutory employee under the borrowed servant doctrine. The trial court entered summary judgment in favor of K-Mart, and the Superior Court affirmed.

The contract between Transco and K-Mart provided for K-Mart to dispatch the Transco drivers and to choose their routes. The trucks which they operated were owned by K-Mart. The court ruled that the plaintiff was a borrowed servant because K-Mart controlled the work to be done and the manner of performance.

In *English v. Lehigh County Authority,* Kelly Labor—a temporary employment agency—assigned Mr. English to provide services for Lehigh County Authority pursuant to a contract between Kelly Labor and the Authority under which Kelly Labor would supply temporary labor to take samples of sewage. Mr. English reported to an Authority employee who directed him

to report to a metering station about 10 miles away. Mr. English was to go into a pit every half-hour to remove samples of sewage for testing. He was found dead at the bottom of the pit from noxious fumes that emanated from the sewage. The administrator of his estate sued the Authority which contended that it was entitled to immunity as an employer under section 481 of the Workers' Compensation Act.

The Authority argued that for workers' compensation purposes, the Authority—and not Kelly Labor—was Mr. English's employer because the Authority was entitled to exercise total control over the sampling process and because Kelly Labor exercised no control over the manner in which any employee whom it furnished the Authority would perform his or her responsibilities. The plaintiff, on the other hand, contended that Kelly Labor should be deemed to be plaintiff's employer because it hired and initially assigned its workers to various customers, it retained the right to fire and discipline its workers, it paid the workers' wages and unemployment compensation taxes, and it maintained workers' compensation insurance. The Superior Court ruled that although Kelly Labor had almost absolute control over which of its workers would serve the needs of its customers, it had no significant control over the manner in which the workers carried out the work to which they were assigned. Consequently, for workers' compensation purposes, the Authority was Mr. English's employer.[2]

---

2. In *Wallis v. AEG Westinghouse Transportation Systems Inc.,* 144 P.L.J. 454 (1996), Judge Judith L.A. Friedman of this court ruled that the immunity provisions of the Workers' Compensation

In the case before this court, plaintiff seeks to distinguish the three cases cited above on the ground that Network's compensation carrier provided workers' compensation benefits to plaintiff. Plaintiff contends that Waste Management should be barred from claiming that it is protected by the immunity provisions of the Workers' Compensation Act because it contractually transferred the responsibility to provide workers' compensation benefits to the lending employer.

Appellate court case law has rejected this argument. See *Lascio v. Belcher Roofing Corp.,* 704 A.2d 642, 644-45 (Pa. Super. 1997), where the court stated:

"The second issue raised by the Lascios is whether a general contractor can claim statutory employer immunity if it has not paid workers' compensation benefits. This issue was resolved in *Cranshaw Construction v. Ghrist,* 290 Pa. Super. 286, 434 A.2d 756 (1981). . . .

"The statutory employer immunity is given in exchange for the potential liability for workers' compensation benefits regardless of whether those benefits are actually paid. *Cranshaw,* 290 Pa. Super. at 291, 434 A.2d at 758. Failure to pay benefits, therefore, is no grounds to abrogate the statutory employer status and the Lascios' argument on this point must fail. *Cranshaw, supra.*"

---

Act did not bar an employee from bringing a tort action against a company that was not the actual employer. She concluded that the Commonwealth Court had rejected the *English v. Lehigh County Authority* line of cases decided by the Pennsylvania Superior Court. In support of her position, she relied on *G&B Packing v. W.C.A.B. (Lindsay),* 653 A.2d 1353 (Pa. Commw. 1995). *G&B Packing* was subsequently reversed by the Pennsylvania Supreme Court in *JFC Temps v. W.C.A.B. (Lindsay), supra.* See pages 405-406 of this opinion.

Also see, *Supp v. Erie Insurance Exchange,* 330 Pa. Super. 542, 550, 479 A.2d 1037, 1041 (1984), where the court ruled that "under the Workmen's Compensation Act, the fact that the 'lending employer' pays for the workmen's compensation insurance is no impediment to finding the 'borrowing employer' to be immune from suit pursuant to section 303."

Plaintiff contends that Waste Management is estopped from claiming that plaintiff is a borrowed employee because of the provisions in the contracts between plaintiff and Waste Management and between Waste Management and Network identifying plaintiff as Network's employee. Plaintiff relies on case law which holds that a business which hired a claimant to perform work under an arrangement that the law would recognize as the performance of services by an independent contractor is estopped from challenging the claimant's assertion that he or she is entitled to workers' compensation protection when (1) the business promised the claimant that he was covered under the business's workers' compensation policy and (2) the claimant relied on this promise in making the decision to provide services on behalf of the promisee. See *e.g., Tri-Union Express v. W.C.A.B. (Hickle),* 703 A.2d 558 (Pa. Commw. 1997); *American Insurance Company v. W.C.A.B. (Barnhart),* 146 Pa. Commw. 608, 606 A.2d 655 (1992). These cases are not controlling because the claimant's reliance on the promise of workers' compensation coverage was an essential element for the application of the estoppel doctrine. In the present case, plaintiff is not asserting that he was promised that he would be permitted to bring a tort action against Waste Management if he was injured while assigned to Waste Management or

even that the ability to bring a tort action against Waste Management in the event that he was injured while performing work on its behalf was an important factor in his decision to accept an assignment with Waste Management.

Plaintiff also argues that Waste Management is bound by the language of the contracts which identify plaintiff as Network's employee. The case law does not support this argument.

In *Wilkinson v. K-Mart, supra,* the plaintiff's tort action against K-Mart was dismissed on the ground that the plaintiff was K-Mart's borrowed employee even though the contract through which the plaintiff was assigned to K-Mart characterized the plaintiff as an employee of the party that supplied the plaintiff to K-Mart. The *Wilkinson* court relied on *Red Line Express Co. Inc. v. W.C.A.B. (Price),* 138 Pa. Commw. 375, 588 A.2d 90 (1991), where the Commonwealth Court rejected the argument that a lessor who contended that the claimant was the lessee's borrowed employee at the time of the accident was bound by the language in the lease that the lessor's employees shall not be considered to be employees of the lessee:

"Although the provisions of the lease tend to indicate that the claimant was to remain an employee of Princeton, the determining factor is the actual conduct of the parties and whether Red Line actually had the power to control claimant's work and manner of performance." *Id.* at 383, 588 A.2d at 94. (citations omitted)

The issue that underlies the legal arguments which plaintiff makes is whether a ruling that extends the immunity provisions of the Workers' Compensation Act

to Waste Management is inconsistent with the purposes for providing immunity from tort law to an employer. The Workers' Compensation Act is intended to be a mixed bag for both the employer and the employee. In exchange for receiving workers' compensation benefits regardless of fault, the injured employee loses the right to recover the damages provided under tort law where the employer's negligence was a cause of the injury; and in exchange for this immunity from tort law the employer must provide workers' compensation benefits whenever an employee is injured in the course of his or her employment.

According to plaintiff, the extension of the immunity provisions to Waste Management results in Waste Management's receiving the benefits of the Workers' Compensation Act without the corresponding obligations that are the quid pro quo for these benefits. Consequently, I should find a legal justification for preventing such an outcome.

I do not agree that Waste Management is receiving the benefits of the Workers' Compensation Act (*i.e.,* immunity from tort law) without assuming the corresponding obligation to provide workers' compensation benefits to its temporary employees. Under the Workers' Compensation Act, Waste Management—and not Network—is obligated to provide workers' compensation protection to Network's employees assigned to Waste Management. See *JFC Temps v. W.C.A.B. (Lindsay), supra.* There are two ways in which Waste Management can assume its obligation to provide workers' compensation coverage for its temporary employees which is the quid pro quo for the immunity protection. It can purchase workers' compensation insurance from

an insurance company or it can pay Network to obtain workers' compensation insurance covering its employees that are assigned to Waste Management.

Waste Management pays Network $11.90 per hour for temporary employees assigned to Waste Management. Network pays its employees $7 an hour. The difference between the $11.90 and the $7 covers the services that Network provides, including workers' compensation coverage. Network would not be purchasing workers' compensation coverage for employees assigned to Waste Management if it was not a part of the package of services that it is selling to Waste Management. Network passes onto Waste Management the cost of obtaining workers' compensation protection on behalf of Waste Management through its charges for this package of services that Waste Management is purchasing. Consequently, this is not a situation in which Waste Management is obtaining the immunity protections of the Workers' Compensation Act without paying for workers' compensation protection for its temporary employees. It is simply paying the cost of workers' compensation coverage for the Network temporary employees to Network rather than to the insurance company that is providing the workers' compensation coverage.

For these reasons, I enter the following order of court.

### ORDER

On May 5, 1998, it is ordered that defendant's motion for summary judgment based on the immunity provisions of the Workers' Compensation Act is granted and plaintiff's complaint is dismissed.